No. 13365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

DONALD LEWIS,

Defendant and Respondent.

---

Appeal from:  District Court of the Thirteenth Judicial
              District,
              Honorable Robert Wilson, Judge presiding

Counsel of Record:

For Appellant:

Hon. Michael Greely, Attorney General, Helena,
 Montana
Harold F. Hanser, County Attorney, Billings,
 Montana
Charles A. Bradley, Deputy County Attorney, argued,
 Billings, Montana

For Respondent:

Moses, Kampfe, Tolliver and Wright, Billings,
 Montana
D. Frank Kampfe argued, Billings, Montana

---

Submitted:  January 24, 1977

Decided:  JUN 10 1977

Filed: JUN 10 1977

Thomas J. Kearney
                                    Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The state appeals from an order of the district court, Yellowstone County, suppressing evidence the state sought to introduce in the trial of defendant Donald Lewis.

On the evening of October 8, 1975, an anonymous person called the home of Del Jones, a member of the Billings School Board. The caller threatened Jones and his family with the statement: "If the schools are not closed tomorrow, your house will be bombed." The recipient of the telephone call laid the telephone receiver on a table and the Billings police were informed of the threatening call. The police, with the assistance of telephone company personnel, traced the call to defendant's residence. Tracing the call was accomplished by means of a "telephone trap" which keeps open the connection between the parties as long as the recipient of the call does not replace the telephone receiver in its cradle. The telephone trap was placed on the telephone at the Jones residence with the consent of Jones and as a result of telephone threats made to members of the school board during the teachers' strike in Billings.

Once the call's origin was traced to defendant's residence two Billings police officers were dispatched for the purpose of confirming the telephone connection between defendant's telephone and the telephone at the Jones residence. Upon arriving at defendant's residence, at approximately 11:00 p.m. on the evening of October 8, 1975, one of the police officers requested and received defendant's permission to use defendant's telephone. When the police officer picked up the telephone receiver he realized the telephone line was dead. The accompanying police officer was

- 2 -

sent outside to investigate. This investigation established the telephone line between defendant's house and the telephone pole was severed.

The police officers then informed defendant they intended to leave defendant's residence to obtain the assistance of a telephone company lineman, who could trace the connection from the severed line. In the early morning hours of October 9, 1975, between 1:00 a.m. and 2:00 a.m., a telephone company employee and police officer returned to defendant's residence and, from the alley behind defendant's property, pulled the fallen telephone line in defendant's backyard over defendant's fence. A lineman's portable telephone was attached to the retrieved telephone line and the connection to the Jones residence was confirmed.

Later on the morning of October 9, 1975, another police officer and an accompanying telephone company lineman arrived at defendant's home. The police officer informed defendant of his Miranda rights and advised defendant the investigation was to continue and photographs were to be taken from defendant's backyard. The lineman repaired and replaced the telephone line, giving the removed portion of the telephone line to the investigating officer. Photographs were taken by the police from inside defendant's backyard.

When the police officer and lineman had left defendant's home, after their second visit on the morning of October 9, 1975, defendant went to the police station inquiring as to the events taking place. Defendant was again informed of his Miranda rights and he proceeded to secure counsel.

- 3 -

On October 9, 1975, the county attorney for Yellowstone County filed an Information charging defendant with the crime of intimidation in violation of section 94-5-203(1)(a), R.C.M. 1947. Subject to the filing of the Information, on October 17, 1975, a police officer and a telephone company lineman returned to defendant's home. The entire telephone cable, from the telephone pole to the defendant's home, was removed at this time and additional photographs of the defendant's home were taken from the street. All searches and seizures conducted on the four noted occasions were performed without a search warrant.

On March 26, 1976, defense counsel submitted a motion to suppress evidence obtained from defendant's home by law enforcement officers and to suppress all statements made by defendant at the time police conducted their investigations. A hearing on defendant's motion to suppress was held in the district court April 2, 1976. On April 9, 1976, the district court issued its order and memorandum holding:

> "* * * that any and all physical evidence secured from the curtilage owned by the defendant and any and all testimony relating thereto shall be suppressed and are deemed inadmissible as evidence against the defendant."

The following issues are presented for review:

1) Whether the district court erred when it ordered all physical evidence secured from the curtilage owned by the defendant and any and all testimony relating thereto suppressed as inadmissible evidence?

2) Whether the district court erred when it ordered evidence secured by the wire tap into defendant's telephone line during the early morning hours of October 9, 1975, suppressed as inadmissible evidence?

- 4 -

The state contends the evidence secured by warrantless search and seizure on the four occasions in question is admissible under these theories:

A)   The telephone company had the authority to secure the evidence in question under section 95-701(b)(d), R.C.M. 1947, and even though the telephone company was acting as agents of the police, this authority was not lessened.

B)   The plain view doctrine sanctions such seizure of evidence if (1) the law enforcement officer was situated in a place where he had a legal right to be and (2) the discovery of the evidence was inadvertent.

Section 95-701, R.C.M. 1947, provides:

"Searches and seizures--when authorized.  A search of a person, object or place may be made and instruments, articles or things may be seized in accordance with the provisions of this chapter when the search is made:

    "(a) As an incident to a lawful arrest.

    "(b)   With the consent of the accused or of any other person who is lawfully in possession of the object or place to be searched, or who is believed upon reasonable cause to be in such lawful possession by the person making the search.

    "(c)   By the authority of a valid search warrant.

    "(d)   Under the authority and within the scope of a right of lawful inspection granted by law."

It is admitted by the state and the facts show that the telephone company was acting as the agent of the police.  Telephone company personnel came upon defendant's property at the request of the police and they were accompanied by the police on each occasion.  The establishment of such an agency presupposes that any warrantless search and seizure conducted by telephone company personnel is legally justified, just if legally justified when conducted by the police.  Section 95-701(b) legally justifies

such a warrantless search and seizure where the defendant gives his consent to the search. However, in the instant case, the testimony of the investigating officer establishes that defendant only consented to the officer's initial entry into defendant's residence and the use of defendant's telephone. This expressed consent falls short of any expressed authorization to search the premises, remove physical evidence or tap into telephone lines. Furthermore, no implied consent authorizing telephone company personnel to enter the premises for the purpose of general maintenance and repair can be construed to authorize an inspection under section 95-701(d), carried on for the purpose of obtaining evidence for the state to be used in a criminal prosecution. State v. LaFlamme, ____Mont.____, 551 P.2d 1011, 33 St.Rep. 632.

The state's theory "B" justifying the warrantless search and seizure of evidence adopts a simplified interpretation of the plain view doctrine. We find Mr. Justice Stewart's remarks in Coolidge v. New Hampshire, 403 U.S.443, 91 S.Ct. 2022, 29 L ed 2d 564, clarifying:

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification--whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused--and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." 403 U.S. 466

> "The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the

familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' <u>Incontrovertible</u> <u>testimony of the senses that an incriminating object</u> <u>is on premises belonging to a criminal suspect may estab-</u> <u>lish the fullest possible measure of probable cause.</u> But <u>even where the object is contraband, this Court has</u> <u>repeatedly stated and enforced the basic rule that the</u> <u>police may not enter and make a warrantless seizure.</u> Taylor v. United States, 286 U.S. 1; Johnson v. United States, 333 U.S. 10; McDonald v. United States, 335 U. S. 451; Jones v. United States, 357 U.S. 493,497-498; Chapman v. United States, 365 U.S. 610; Trupiano v. United States, 334 U.S. 699." (Emphasis supplied.) 403 U.S. 468.

In light of the above discussion, we hold the plain view doctrine misapplied to the facts of this case. The police, with the aid of telephone company personnel, had no prior justification for searching the defendant's premises, much less seize evidence, without a search warrant. There is an obvious absence of hot pursuit, search incident to lawful arrest or other exigent circumstances which would permit the application of the plain view doctrine to justify a search and seizure without securing a search warrant. State v. Amor, 164 Mont. 182, 520 P.2d 773; Coolidge v. New Hampshire, supra.

We find, as did the district court, that the facts demonstrate the Billings police secured evidence from defendant's residence without defendant's consent and without a search warrant. Such a warrantless seizure, absent legal justification, renders the evidence and all testimony relating thereto inadmissible in defendant's criminal prosecution.

The order of the district court is affirmed.

_____
Justice

- 7 -

We Concur:

_____
Chief Justice

_____
Wm. A. S. Haswell

_____
John Conway Harrison

_____
Daniel J. Shea
Justices.

- 8 -