No. 79-69
and 79-70

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

STATE OF MONTANA,

                    Plaintiff and Respondent,

        -vs-

WILLIAM JOHN COLEMAN,

                    Defendant and Appellant.

----------------------

STATE OF MONTANA,

                    Plaintiff and Respondent,

        -vs-

THOMAS G. CASE,

                    Defendant and Appellant.

Appeals from:   District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone,
                Honorable Charles Luedke, Judge presiding.

Counsel of Record:

        For Appellants:

        Allen Beck argued, Billings, Montana

        For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Allen Chronister argued, Assistant Attorney General,
        Helena, Montana
        Harold F. Hanser, County Attorney, Billings, Montana
        James D. Whalen, Deputy County Attorney, Billings,
        Montana (argued)

Submitted: 6-16-80

Decided: SEP 17 1980

Filed: SEP 17 1980

_Thomas J. Kearney_
                              Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

These cases, consolidated on appeal, arise out of judgments of conviction against the defendants entered in the District Court, Thirteenth Judicial District, Yellowstone County.

Three of the issues raised in each appeal are the same. For that reason, we consolidated the matters for oral argument. Principally the defendants contend that electronic surveillance of each of the defendants was illegal because the supporting affidavits upon which warrants for electronic surveillance were issued were inadequate in that (1) no compelling state interest was shown, and (2) the Aguilar-Spinelli standards were not met. Moreover, it is also argued by each defendant that the warrants did not specifically describe the place to be searched. We find against the defendants on these contentions and the remaining issues each defendant raised. We will discuss each case separately avoiding repetition where possible.

I.

William John Coleman, No. 79-69.

William John Coleman appeals from his conviction on September 14, 1979, of felony sale of dangerous drugs and felony possession with intent to sell dangerous drugs.

On January 12, 1979, Stanley Underwood, a parolee, was subjected to a parole search by officers of the Billings police department. As a result, Underwood faced parole revocation because of possession of illegal drugs, but he was promised release if he would assist the police in the investigation of William Coleman.

On January 14, 1979, Underwood met defendant Coleman while wearing a body transmitter which had been provided

-2-

by the Yellowstone County Criminal Investigation Division. A receiver and tape deck were used to record the transmissions of the conversations between Underwood and Coleman.

Coleman's arrest occurred directly as a result of the electronic surveillance, during which the officers overheard the purchase by Underwood from Coleman of a half-pound and a quarter ounce of methamphetamines. At the time of the arrest, Coleman was informed by Detective Wickhorst that they had "it all on tape". Coleman consented to a search of his home which occurred later that evening, after Detective Wickhorst obtained a search warrant from Justice of the Peace Pedro Hernandez. The search of the home turned up additional drugs and some drug handlers' paraphernalia such as weighing devices.

Each of the defendants recognizes that the legality of interception of telephone calls or the recording of conversations was settled in State v. Hanley (1980), ____ Mont. ___, 608 P.2d 104, 37 St.Rep. 427. There we said that police officers may intercept, transmit or record private conversations if one of the parties to the conversation consents, even an informer, as long as the will of the consenting party has not been subjected to overbearing pressure from the authorities. We pointed out the language from United States v. White (1970), 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453, that since an informer who conceals his police connections may write down for official use his conversations with a suspect and testify concerning them without a warrant issued beforehand, the simultaneous recording of the same conversation by electronic means made by the informer or by others from transmissions received from the informer is likewise admissible. County attorneys in this state follow the practice, which we approved, of obtaining a court order before electronic interception of

-3-

criminal suspects is undertaken, as a result of our decision in State v. Brackman (1978), ___ Mont. ___, 582 P.2d 1216, 35 St.Rep. 1103.

Coleman's major argument is that the application made to the District Court for permission to use electronic surveillance on him was inadequate because it does not meet the Aguilar-Spinelli standard, and because there is no compelling state interest requiring the issuance of the order.

The Aguilar-Spinelli test is derived from Aguilar v. Texas (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; and Spinelli v. United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. The test is that the application for order or warrant must demonstrate that the informant obtained his information in a reliable manner and that the application establishes that the informant is reliable or that the informant's information has been corroborated by information obtained independently of the informant's allegations.

We do not reach the Aguilar-Spinelli test in this case, however, because the tape recording of the drug transaction transmission was never played to the jury or entered into evidence. Underwood testified fully during Coleman's trial regarding the drug transaction between himself and Coleman. The District Court found that the direct testimony of Underwood was sufficient to convict, and refused the admission of the tape into evidence. Since the recorded evidence was not used to convict Coleman, there is no need for us in this case to examine the Aguilar-Spinelli test or whether a compelling state interest required the issuance of the surveillance order. State v. Jackson (1979), ___ Mont. ___, 589 P.2d 1009, 36 St.Rep. 169; State v. Leighty (1978), ___ Mont. ___, 588 P.2d 526, 35 St.Rep. 2017.

-4-

In like manner, because the tape was not used in evidence, there is no necessity for us in Coleman's case to examine the issue of specificity with respect to the order for electronic surveillance, that is, that the order did not specify a particular place where the electronic surveillance could be effectuated.

An issue which relates to Coleman's case and not to that of Thomas Case is the surmise of Coleman that the police authorities were tapping his telephone prior to January 12, 1978, and particularly prior to January 14, 1978, when the order permitting electronic surveillance of his conversations with Underwood was granted.

Coleman contends that there was prior illegal electronic surveillance in this case because (1) the state became aware of William Coleman's alleged drug dealing through unlawful telephone monitoring during 1978; (2) that the monitoring led to the arrest of Underwood, the parolee, and the search of his home; and (3) that the illegal monitoring led to the recruitment of Underwood by the Billings Criminal Investigation Division to assist in the arrest of Coleman.

This contention is based on the testimony of Amado Garcia who stated that on January 13, 1979, Detective Wickhorst told Garcia that he was suspected of engaging in illegal activities with William Coleman and others. Garcia asked Wickhorst how that information had been obtained and Wickhorst's response was, "We should hold down our conversations on the phone." Garcia also testified that Wickhorst had stated on January 13, 1979, that the police were aware of Coleman's activities before Christmas 1978. Also Cathy Underwood, the wife of the parolee, testified that on the night of the parole search of her home on January 12, 1979, a member of the Billings CID

-5-

who returned her to her home told her "not to call on the phones, as they were probably all tapped and not to warn her friends that the phones were all tapped."

Underwood testified that during the parole search of his home, Detective Wickhorst went to the bedroom, disassembled the telephone and removed something from it which he placed in his pocket.

Underwood also testified that while he remained in jail on January 30, he had four telephone calls tapped by the application of a suction cup and an electronic recording device.

With respect to the telephone calls in the police station which were recorded by use of the suction cup electronic device, since Underwood consented to that monitoring, the telephone interception by the police authorities of those conversations was not illegal under State v. Hanley, supra.

This Court cannot be expected to reverse a criminal conviction upon the mere conjecture that the police authorities were using illegal wiretapping of telephone calls to set in motion the chain of circumstances that led to the search of the parolee's home. There is not a scintilla of direct evidence in the record to support such conjecture. An issue built upon such conjecture is simply weightless for purposes of appeal.

II.

Thomas G. Case, No. 79-70.

Defendant Thomas G. Case was charged by information with felony criminal sale of dangerous drugs and felony criminal possession of dangerous drugs. Upon trial on motion of Case, a directed verdict was granted by the court in Case's favor with respect to the charge of criminal possession of dangerous drugs. The charge of criminal sale of dangerous drugs

-6-

was submitted to the jury which convicted the defendant. Judgment of conviction and sentence were pronounced on June 18, 1979.

The conviction of Case relates to the same undercover agent, Stanley Underwood. Following Underwood's assistance to police authorities in the Coleman matter, he was released from custody. He was again arrested on January 30, 1979, along with his wife. Underwood made a deal that he would cooperate with the police in arresting Thomas Case if the police would agree not to prosecute his wife.

On January 30, 1979, Detective Orval Hendrickson of the Billings CID applied to the District Court for authorization to use an electronic monitoring device on Stanley Underwood. The order was granted by the District Court for a period of ten days beginning January 30, 1979.

In the afternoon of January 30, 1979, Underwood made a telephone call to Case which was recorded by the police authorities through the use of a suction cup recording device.

As a result of the telephone call, a drug buy was arranged. Underwood proceeded to Case's residence in Billings where the transaction involving the purchase by Underwood from Case of methamphetamines was consummated.

After the arrest of Case, the officers requested his permission to search his residence but he refused. The officers had already commenced the steps necessary to secure a search warrant, including notifying a justice of the peace and preparing the necessary papers. Case, without further conversation, and apparently without any inducement, told the officers they "might as well" go ahead and search because they would not find anything. The record does not reveal that a search warrant was obtained for the search of the Case

-7-

residence, although Case argues on appeal on the basis that a search warrant was issued. In any event, the marked money furnished for the buy, and drug-related paraphernalia, were seized during the search of Case's residence.

Case, as did Coleman, argues that the application for the order authorizing the use of the electronic monitoring device does not meet the Aguilar-Spinelli test, supra, and therefore the issuance of the order authorizing the electronic monitoring was unlawful, and any evidence secured as a result thereof should be suppressed.

Detective Hendrickson's application for an order to allow the use of electronic monitoring included these statements:

> ". . . Stanley Underwood is a confidential source of information who has agreed to cooperate with the Criminal Investigation Division of the Yellowstone County Attorney's Office. Underwood has stated that he has been furnished with dangerous drugs, to wit, methamphetamines, in the past by Tom Case. On Monday, the 29th of January, 1979, Tom Case was at the Underwood residence and stated that he would have quantity of methamphetamines for sale on the 30th of January, 1979. Underwood stated that Case would front him one ounce of methamphetamine. At this time, Underwood plans to approach Case for the purpose of purchasing one ounce of the methamphetamines at the Case residence. The cost of one ounce of methamphetamine is approximately $1,100.00.
>
> "Stanley Underwood is currently on parole for burglary but has supplied reliable information in the past to the Criminal Investigation Division, Yellowstone County Attorney's Office, which has lead (sic) to the seizure of contraband and arrest. . ."

On the basis of the application, the District Court issued an order authorizing electronic monitoring. Underwood was equipped with a transmitting device. He and Detective Wickhorst proceeded to Case's residence in Billings and the transaction involving the drug buy occurred.

Based on the information obtained from the electronic monitoring, including the telephone call from Underwood to Case, and the transaction relating to the drug buy, Case was

-8-

arrested. At trial, the communications overheard by electronic surveillance, as well as evidence seized in the search, were admitted into evidence.

The affidavit contained in the officer's application for an order authorizing electronic monitoring was sufficient. It properly informed the District Court of the underlying circumstances from which the informant (Underwood) concluded that the narcotics were located where he claimed they were and further informs the District Court of the underlying circumstances from which the officer making the application concludes that the informant was credible and his information reliable. On this basis, the Aguilar-Spinelli test is satisfied. See, State v. Leistiko (1978), ____ Mont. ____, 578 P.2d 1161, 1163, 35 St.Rep. 590, setting forth the rule that the affiant must support his claim that the informant was credible and reliable.

Case contends that because Stanley Underwood was a convicted felon who was on parole and facing revocation at the time of the application, he was not a reliable informant. However, the statement of the officer in the application that Underwood had been a reliable informant in the past and that his information had resulted in the seizure of contraband and arrests clearly established the reliability of the informant for the purposes of obtaining the order authorizing electronic monitoring.

Case however, further attacks the order which authorizes the electronic monitoring upon the basis that a specific description of the place to be searched is not set forth in that order. He contends that the Fourth Amendment of the federal constitution requires search warrants to describe the place to be searched with particularity. He points to the provisions in the federal law, 18 U.S.C. §2518(1)(b)(ii), which

-9-

state that applications for surveillance orders must include "a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted."

The State responds to this argument, first that 18 U.S.C. §2518, does not apply here under our decision in Hanley, supra, because the federal law, as we said in Hanley, does not apply to monitoring by consent of the participants. That argument is correct. The State secondly contends that the applicable statute which controls this case is section 46-5-201, MCA, which provides:

"A 'search warrant' is an order:

"(1) in writing;

"(2) in the name of the state;

"(3) signed by a judge;

"(4) particularly describing the thing, place, or person to be searched and the instruments, articles, or things to be seized;

"(5) directed to a peace officer commanding him to search for personal property and bring it before the judge."

It is obviously impossible for the court, or the officer applying for an order authorizing electronic monitoring, to pinpoint the location where the criminal transaction to be monitored will take place. In drug buy situations, it will depend on the whim of the parties at the time, relating to their own conveniences and even their reactions to fears of being detected. In this case for example, if the order authorizing the monitoring had specified that the monitoring occur while Underwood was in Case's home, the order would have been useless because this transaction occurred in Case's yard, where Underwood met him, and was continued subsequently in Case's automobile. Recognizing the inability

-10-

of any officer or court to prognosticate exactly where a criminal transaction such as a drug buy, will take place, does this mean that an order authorizing electronic monitoring without specifying the place of such monitoring is constitutionally impermissible? We hold not.

As the state argues, and we agree, section 46-5-201, MCA, supra, describing what may be searched refers to "the thing, place or person" to be searched. The language of the statute is in the disjunctive. The person to be searched, or whose conversation is to be overheard, when named in the order authorizing the surveillance is sufficiently precise in itself to meet this constitutional objection to the order, because the order is directed to the monitoring of a specific person, wherever that person may be. The lately-circulated popular aphorism that "Everybody's got to be someplace" tersely meets Case's contention: when the order authorizes the surveillance of a particular person, for a limited amount of time as in this case, the geographic location of the search is perforce tied to the whereabouts of the suspect. No greater particularity as to place is required in the order authorizing electronic surveillance. As a matter of first impression on this point, we so hold.

It is further contended by Case that the interception of monitoring by the police of a telephone call between Underwood and Case on January 30, 1979, was beyond the intended scope of the court order authorizing electronic surveillance on the same date.

The order itself authorized only the utilization of an electronic device on Underwood for use in monitoring conversations with Case. Prior to the use of the monitor on Underwood however, a telephone call was made by Underwood from the CID office to Case. The call was made at the direction of the

-11-

officers in the CID and was monitored by the use of a suction cup attached to the telephone as a part of a recording device. Case contends that the suction cup device and the recorder were not placed on the body of Stanley Underwood and therefore were in violation of the court order authorizing electronic monitoring. Case contends that the recording of the telephone conversation was an invasion of his privacy in violation of 1972 Mont. Const., Art. II, §10, as well as his rights to privacy under the federal constitution.

The answer to Case's contention here is again found in Hanley, supra, where we held that interception of telephone conversations by police officers is legal if one of the parties to the conversation consents, even an informer. This Court has never held that a court order is necessary to monitor a telephone conversation, where one of the parties to the telephone conversation consents. Our decision in State v. Brackman, supra, concerned a conversation between parties in an open parking lot, where the electronic monitoring violated the reasonable expectations of privacy between the participants in the conversation that was monitored. No such reasonable expectations of privacy exist in a telephone conversation. Neither party to a telephone conversation can ordinarily see the other. Neither has any way of knowing whether or not the conversation on the telephone is being overheard by other parties. Neither the Montana nor the federal constitution prohibits such monitoring where one of the participants consents. See 18 U.S.C. §2511(2)(c).

The monitoring of the telephone conversation here was legal, even though it preceded or led to the electronic monitoring of the actual drug transaction. State v. Hanley, supra.

-12-

Finally, Case contends, though it is not fully argued in his brief, that the order authorizing the electronic surveillance should not have been issued because under Brackman, supra, there must be a compelling state interest established before the order can be issued for monitoring.

We held in Brackman that a prior warrant or order of authorization must be obtained for monitoring with the consent of the participant and that the standard to be met for obtaining that type of warrant is not probable cause, but compelling state interest. 1972 Mont. Const., Art. II, §10. In State Etc. v. District Court, Etc. (1979), ___ Mont. ____, 591 P.2d 656, 36 St.Rep. 489, we held that a compelling state interest exists when the state must enforce its criminal laws for the benefit and protection of other fundamental rights of its citizens.

We agree with the State that the sale or use of methamphetamine, a dangerous drug, has been legislatively determined to be so serious a crime as to require, in the case of the sale, a possible maximum life sentence under section 45-9-101(3), MCA. The enactment and enforcement of laws, especially criminal laws, is essential to the preservation of a free, safe and orderly society. There was, therefore a compelling state interest under which the District Court, in this case, faced with the affidavit of the applying officer relating to Case, was required to act and to issue the order authorizing electronic surveillance. The Brackman requirement of a compelling state interest is met in this case.

We also hold against the defendant on his contention that the evidence produced by the search of his home should be suppressed. He consented in fact to that search, and his consent forecloses any objection on the basis of illegal search to the materials the search produced. State v. Yoss (1965), 146 Mont. 508, 409 P.2d 452.

-13-

## Conclusion

The judgments of conviction in each of these cases are affirmed.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____
                Justices

-14-