No. 83-543

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

   Plaintiff and Appellant,

-vs-

GEORGE SOLIS,

   Defendant and Respondent.

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

       Hon. Mike Greely, Attorney General, Helena, Montana
       Jim Scheier argued, Asst. Atty. General, Helena
       J. Fred Bourdeau, County Attorney, Great Falls,
       Montana;  Charles Lucero argued, Deputy County Atty.,
       Great Falls, Montana

   For Respondent:

       Jeffrey T. McAllister argued, Great Falls, Montana

                        Submitted:   October 29, 1984

                          Decided:   December 31, 1984

Filed:   DEC 3 1 1984

                 _Ethel M. Harrison_
_____
                  Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

On March 16, 1983, defendant George Solis was charged by information with one count of felony theft, in violation of § 45-6-301(1)(a), MCA. Trial was twice scheduled and vacated at the prosecution's request before being rescheduled for Monday, October 3, 1983. The State filed a "Just notice" of other crimes evidence on Friday, September 30, 1983, together with a motion in limine to introduce a videotape. Defendant then filed a motion in limine on the morning of trial, objecting to the timeliness of the State's "Just notice" and the admission of the video tapes into evidence. Following an in-chambers hearing, the trial judge suppressed the videotape and postponed trial. On October 5, 1983, a written order was issued denying the prosecution's request to present evidence of other crimes and suppressing the videotape. The State appeals. We affirm the order of the District Court.

During the months of January and February 1983, the Cascade County Sheriff's office employed Jimmy Emmons, an undercover officer from Indiana, to act as proprietor of a pawnshop, Ma & Pa's Second Hand Store. As part of that operation and with Emmons' knowledge, Sheriff's officers made video recordings of the events which transpired.

Video recordings involving defendant were made on five separate occasions. On January 28, 1983, defendant sold necklaces to Emmons. On February 15, 1983, defendant sold nine cartons of cigarettes to Emmons and inquired as to Emmons' interest in some tires. Fifty minutes later, defendant returned, sold Emmons four B.F. Goodrich 8-ply tractor tires and told Emmons he could get more new tires. On February 18, 1983, the theft of four tractor tires matching the

2

description of those sold to Emmons by defendant was reported.

On February 22, 1983, Emmons purchased from defendant six more tires for $140 on the condition that defendant take an I.O.U. for $100. Defendant discussed with Emmons his scheme to obtain twenty additional tires and a pending burglary charge against him. On February 24, 1983, defendant returned to collect his $100. Defendant was arrested during that visit and eventually charged with felony theft of the initial four tires he sold to Emmons.

All of those transactions were videotaped. However, neither the Cascade County Attorney's office nor the Cascade County Sheriff's office ever sought or obtained a search warrant prior to making any of the video recordings.

An omnibus hearing was held April 27, 1983, at which the prosecution represented that it did not intend to offer evidence of other offenses or acts under Rule 404(b), M.R.Evid. At that time, the prosecution intended to try Solis using Emmons' testimony regarding only the sale of the four tractor tires. Thereafter, Emmons' refusal to return to Montana to testify forced the cancellation of two scheduled trial dates. The Cascade County Attorney's office decided to try the case using the videotape and testimony of deputies who ran the taping machines. That decision prompted the September 30, 1983, "Just notice."

In its appeal of the October 5, 1983, order of the District Court, the State presents this Court with four issues:

1. Whether the defendant's right to privacy, as guaranteed by the Montana Constitution, was violated.

2. Whether the videotape evidence meets the substantive guidelines of admissibility established in Just?

3. Whether the prosecution complied with the procedural guidelines established in Just in notifying the defendant of its intent to offer evidence of other crimes, wrongs, or acts.

4. Whether the State waived its right to offer evidence of other crimes, wrongs, or acts.

Our resolution of issue one renders the remaining issues moot.

"The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Mont. Const. Art. II, § 10.

We use a two-part test to determine whether an individual has a constitutionally protected right of privacy: (1) the individual must have either a subjective or an actual expectation of privacy; and (2) that expectation must be viewed by society as reasonable. The Missoulian v. Board of Regents of Higher Education (Mont. 1984), 675 P.2d 962, 967, 41 St.Rep. 110, 116. Thus, the first point for resolution of this case is whether defendant exhibited an expectation of privacy during his conversations at the pawnshop and, if so, whether that expectation was reasonable.

Having viewed the videotapes, we find that defendant did exhibit an actual expectation of privacy. His conversations with Jimmy Emmons were held in a small, enclosed office. The only other individual present was an unidentified friend of defendant. Further, defendant's expectation of privacy was reasonable. There were no visible, separate areas from which other individuals may have overheard the conversations. Thus, it was not unreasonable for defendant to have expected no one but his unidentified friend and Emmons heard the conversations.

4

In support of its position, the State argues that our decision in State v. Coleman (Mont. 1980), 616 P.2d 1090, 37 St.Rep. 1661, requires a determination in this instance that defendant had no reasonable expectation of privacy. We do not agree. In Coleman, we reaffirmed our position "that interception of telephone conversations by police officers is legal if one of the parties to the conversation consents, even an informer." Coleman, 616 P.2d at 1096. Likewise, argues the State, since Jimmy Emmons consented to the video recordings of his transactions with Solis, those recordings required no court order. However, our decision in Coleman and our recent decision on the same issue, State v. Canon (Mont. 1984), 687 P.2d 705, 41 St.Rep. 1659, rely on the nature of a telephone conversation as opposed to a face-to-face conversation. An individual using a telephone has no way of knowing whether that conversation is being overheard by other parties. Thus, there exists no reasonable expectation of privacy. Coleman, supra.

We are aware of the plurality opinion in United States v. White (1971), 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453. With reference to the issue now before this Court, the Supreme Court of the United States said:

> "No different result should obtain where . . . the informer disappears and is unavailable at trial; for the issue of whether specified events on a certain day violate the Fourth Amendment should not be determined by what later happens to the informer. His unavailability at trial and profferring the testimony of other agents may raise evidentiary problems or pose issues of prosecutorial misconduct with respect to the informer's disappearance, but they do not appear critical to deciding whether prior events invaded the defendant's Fourth Amendment rights." White, 401 U.S. at 753-754.

Furthermore, the plurality opinion in White was approved in United States v. Caceres (1979), 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733, wherein the Supreme Court said:

5

"Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." Caceres, 440 U.S. at 744.

This Court is not bound by decisions of the United States Supreme Court where independent grounds exist for reaching a contrary result. State v. Van Haele (Mont. 1982), 649 P.2d 1311, 39 St.Rep. 1586. State v. Hyem (Mont. 1981), 630 P.2d 202, 38 St.Rep. 891. In Hyem, the Court divided over the question of whether the delegates to the Montana State Constitutional Convention intended to extend the right of privacy to individual action. However, all members of the Court agreed that independent state grounds existed for this Court to extend greater privacy rights, and thereby greater protection against unreasonable search and seizure, than would be afforded under the Federal Constitution.

Much has been written about whether a state court should grant greater rights than the United States Supreme Court where the State Constitutional language is identical to that in the Federal Constitution. In State v. Jackson (Mont. 1983), 672 P.2d 255, 40 St.Rep 1698, a divided court held that the Montana Constitutional guarantee against self-incrimination does not afford greater protection than that afforded under the Federal Constitution. However, in that instance the language in the Montana Constitution does not afford a basis for distinguishing self-incrimination rights from those articulated in the Federal Constitution. This Court has afforded greater rights in search and seizure cases because the Montana Constitution specifically recognizes the importance of the right of privacy.

In Van Haele, 649 P.2d at 1313, Chief Justice Haswell writing for the majority said:

6

"We decline to overrule our previous citizen search cases and reaffirm our position taken therein. We base our reasoning on the firm stance taken by the Montana Constitution guaranteeing an individual's right of privacy."

The debate among delegates considering the privacy section to the Montana Constitution evidences clear opposition to electronic surveillance. The delegates considered whether to specifically ban eavesdropping in the Constitution itself. In debating this amendment, Delegate Campbell said:

"We at the committee felt very strongly that the people of Montana should be protected as much as possible against eavesdropping, electronic surveillance, and such type of activities. We also recognize that there may in the future be a legitimate need for such in legitimate police activities. After careful consideration of the rough draft that we did produce, we found that the citizens of Montana were very suspicious of such type of activity. We found from the law enforcement officers we talked to that there was really not a need and such activity was not taking place at this time. We had then decided that what we had done was made constitutional something that we may someday want to regulate or even abolish. There were people that would--testified to our committee that the wiretapping and such should be abolished expressly in the Constitution. It was our feeling, after considering this, that it should not be solidified and cemented into the Constitution; it should be made a legislative matter; and as such, we have removed reference to it from the Constitution." Montana Constitutional Convention, Verbatim Transcript pp. 1682-1683.

Delegate Robinson, speaking in opposition to the position of Delegate Campbell, said:

"I don't see, really, how you can talk about privacy and in the same breath mention the possibility of wiretapping or electronic surveillance. I think these are probably two most incompatible things that you could ever have." Montana Constitutional Convention, Verbatim Transcript p. 1683.

Delegate Dahood said:

"After listening to testimony, after examining briefs that were submitted to us, after analyzing the situation, it is inconceivable to any of us that there would ever exist a situation in the State of Montana where electronic surveillance could be justified. And the thinking throughout

the United States is, electronic surveillance shall be justified only in matters involving national security, perhaps in matters involving certain heinous federal crimes where the situation is such that in those instances we must risk the right of individual privacy because there is a greater purpose to be served. But within the area of the State of Montana, we cannot conceive of a situation where we could ever permit electronic surveillance." Montana Constitutional Convention, Verbatim Transcript p. 1687.

In Coleman, supra, and Canon, supra, this Court allowed tapping of a telephone without a warrant, where consent was given by one party to the conversation, for the reason that the other party to the telephone conversation could not see what was transpiring at the other end of the line and therefore assumed the risk of such monitoring. These decisions may have gone further than the Constitutional Convention delegates intended. However, this very subject was discussed during the debate and Delegate Robinson said:

"Oh, no. You're--there's a difference between your knowing that you're telling me and you know whether there is someone around us listening or if it's just you and I; whereas, on the telephone, you may tell me that and you may suspect that I'm the only one listening, but you certainly may not know that." Montana Constitutional Convention, Verbatim Transcript p. 1686.

If we were to extend warrantless eavesdropping beyond the telephone conversation sanctioned in Coleman and Canon, we would clearly be violating the intent of those who drafted the privacy section of our State Constitution. This we refuse to do.

We hold that in face-to-face encounters in a private setting, there is a reasonable expectation that hidden monitoring is not taking place. This does not foreclose invasion of the right of privacy under appropriate circumstances.

Since defendant's privacy expectation was reasonable, it could not be invaded absent a compelling state interest.

Mont. Const. Art. II, § 10. A compelling state interest "exists where the state enforces its criminal laws for the benefit and protection of other fundamental rights of its citizens." State ex rel. Zander v. District Court (1979), 180 Mont. 548, 556, 591 P.2d 656, 660. Especially in situations such as this, where a suspect has engaged in repeated activity thought to be criminal in nature, there exists a compelling state interest for the State to invade an individual's right of privacy.

However, even when the State has such a compelling interest, the invasion of an individual's privacy may usually occur only with certain procedural safeguards. In this instance, those safeguards are the ones attached to our right to be free from unreasonable searches and seizures. The State was required to show probable cause to support the issuance of a search warrant. Mont. Const. Art II, § 11.

This area of law is confusing because of the numerous approaches to the right of privacy issue in the case law. There has been unnecessary emphasis placed on distinguishing right to privacy cases from search and seizure cases. The right to privacy is the cornerstone of protections against unreasonable searches and seizures. Thus, a warrantless search can violate a person's right of privacy and thereby violate the right to be free from unreasonable searches and seizures.

It is not always feasible to obtain a search warrant. Time constraints sometimes make it necessary to conduct warrantless searches. However, in the instant case the trial judge found that this did not "appear to be a situation of exigent circumstances precluding a reasonable opportunity for the said Sheriff's office to seek a prior search warrant."

9

Absent a clear abuse of discretion, the findings of the trial court will be upheld on appeal.

On the basis of this finding, we hold that the warrantless recording of defendant's conversations with Jimmy Emmons violated defendant's right to be free from unreasonable searches.

The same rationale applies to eavesdropping by the law enforcement officers who were running the video tape machine. They were entitled here to invade privacy, but not without a warrant. The warrantless eavesdropping constituted an unreasonable search.

The District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

Justice John C. Sheehy, concurring specially:

I concur with the result in this case. The hidden video camera in the case recorded the defendant visually and aurally. The use of the video camera in the manner described in this case constituted a "search" of the defendant. See Katz v. United States (1967), 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507. A warrantless search is Per Se unreasonable, unless it falls within one of the defined exceptions to the warrant requirement. Coolidge v. New Hampshire (1971), 403 U.S. 443, 29 L.Ed.2d 564, 91 S.Ct. 2022. The exceptions to the warrant requirement generally arise out of exigent circumstances necessary to protect or preserve life or property or to avoid serious injury. See Wayne v. C. S. (C.A.D.C. 1963), 318 F.2d. 205. No exigent circumstances appear here to justify the warrantless search. Accordingly, the video tape of the defendant in this case, without more, was invalidly obtained and was properly excluded from evidence.

_____
　　　　　　　Justice

Chief Justice Frank I. Haswell, specially concurring:

I concur in the result for the reasons stated by Justice Sheehy.

_____
　　　　　Chief Justice

Mr. Justice Fred J. Weber, specially concurring:

I concur in the result for the reasons stated by Justice Sheehy.

_____
　　　　　Justice

Mr. Justice John Conway Harrison, dissenting.

I dissent.

We are here involved in a case in which known criminal defendants have previously dealt with a "mom and dad" pawn shop, where we are giving them far more than the benefit of the doubt of an invasion of their privacy. In these days where banks are monitored by video equipment, hotels and motels are involved in video taping of customers and many business open all night try to protect their business from persons such as we are here involved with, video tapes run without anyone's privacy being invaded. I find it incredible under these circumstances that the effect of a carefully laid "sting" operation to catch just such people is ruled inadmissible.

Lack of knowledge of the people involved, plus the "sting" operator, in my opinion does not render the entire video tape unreliable to reveal the contents of the conversations. See United States v. Knohl (2nd Cir. 1967), 379 F.2d 427, I would hold it was within the discretion of the trial court to find the video recordings here were reliable and the tape should be admitted into evidence. United States v. Avila (2nd. Cir. 1971), 443 F.2d 792; cert denied 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258.

While we have not previously, to my knowledge ever expressly promulgated the requirements that must be met in order to lay a proper foundation for the admission of video recordings into evidence other than in State v. Warwick (1972), 158 Mont. 531, 494 P.2d 627, I note in my research that the general standards for the authentication are widely accepted. See 58 ALR2d 1032 and 29 AmJur2d, evidence, §436, such standards are set forth in various forms in other states and in the Federal Courts including Warwick, supra.

I think the proper test for such admission is set forth in U.S. v. Biggins (5th Cir. 1977), 551 F.2d 64, where the Court held:

> "The trial court properly admits a sound recording into evidence only when the party introducing it carries its burden of going forth with the foundation evidence demonstrating that the recording as played as an accurate reproduction of the relevant sounds previously audited by the witness. As a general rule, at least in the context of a criminal trial, this requires the prosecution to go forward with respect to the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in relevant portions of the recording and the identification of the relevant speakers."

See also U.S. v. McMillan (8th Cir. 1974), 508 F.2d 101, cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); U.S. v. McKeever (S.Dist. N.Y. 1958), 169 F.Supp 426. Failure to allow the officers witnessing the sale was error.

Viewing the entire operation presented by this case, I find the evidence of guilt so overwhelming that not to allow this evidence to go before a jury is tantamount to declaring the issue of guilt to be irrelevant. I would find that the trial court abused its discretion in not allowing a jury to view a video tape after limiting the tape to the offense charged.

_____
Justice

I join in the dissent of Mr. Justice John Conway Harrison.

_____
Justice

13