MR. JUSTICE MORRISON,
concurring:
I am taking the rather unusual step of replying to the dissent of Justice Sheehy in this case. The majority opinion, although authored by this writer, speaks for the majority of the Court. The views herein expressed are my own.
The dissent is an eloquent, if legally unsound, defense of privacy. Its several weaknesses may be readily discernible but I wish to formally join the issue.
The dissent states:
“I maintain that the Montana constitutional framers in 1972 wanted to do more for Montanans in the field of privacy. They adopted Art. II, Section 10 to give Montanans a heightened right of privacy, beyond the privacy rights found in the U.S. Constitution. That aspiration for a heightened right meant that our state constitu *85 tion would afford privacy greater than the minimum guarantees of the federal constitution.”
The dissent then goes on to define the majority position:
“Gone is that beautiful conception. Left only are the minimum protections of the federal constitution, which nowhere expressly guarantees individual privacy.”
Our people should not be mislead by this careless characterization of Montana’s privacy right. The framers of our constitution intended that privacy be specifically recognized and the right as it exists under Montana law is unquestionably paramount to the privacy right implied in the federal constitution.
In State v. Solis (1984), [214 Mont. 310,] 693 P.2d 518, 41 St.Rep. 2493, this issue was directly confronted. The United States Supreme Court, in United States v. Caceres (1979), 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733, had said:
“Neither the constitution nor any act of congress requires that official approval be secured before conversations are overheard or recorded by government agents with the consent of one of the conversants.”
We refused to follow the United States Supreme Court in Solis. We specifically recognized that the right of privacy in Montana is greater than under the United States Constitution and that we need not, under these circumstances, follow the lead of the United States Supreme Court. The majority of this Court held that electronic eavesdropping, by video taped recording, violated the right of privacy and was subject to exclusion. Thus, this Court firmly recognized the superior right of privacy in Montana.
The dissent again goes awry, in attempting to identify an inconsistency between the dissenter’s view as expressed in State v. Hyem, supra, and State v. Van Haele, supra. The dissent states:
“It defies imagination how a criminal exception can be read into the clear language of the Art. I, Section 10. The glaring internal inconsistency of the majority is the apparent concession that the privacy clause applies to private action if the private actors are criminals.”
This position of the dissent underscores the rationale that resulted in State v. Brecht, supra, and its progeny. The majority opinion does not imply nor does the dissent in Van Haele indicate that there is a criminal exception to the privacy clause of the Montana Constitution. The dissent continues to confuse the privacy clause with the exclusionary rule.
*86 Criminal conduct, unless done with state complicity, does not violate privacy. However, the fruits of felonious action may be excluded as evidence, not because there is a constitutional violation, but because the trial court feels its exclusion necessary to preserve the integrity of the judicial system. “Other crimes evidence” is excluded because the courts have decided that its probative weight is usually less than its potential prejudicial effect. Hearsay evidence is normally excluded because, without the opportunity for cross-examination, its credibility cannot be sufficiently tested. The court excludes evidence for a variety of reasons including preservation of court integrity. On the latter basis a court may feel that a search is so abhorrent that the evidence should be excluded rather than in any way legitimized. This rule has nothing to do with the constitution. The rule can be reworked, shaped, and changed as other rules of evidence.
The dissent’s real plea emanates from a public policy concern. The public policy issue of whether the privacy clause should cover private action has not been treated in the majority opinion. Rather, we have sought to determine whether there is a clear intention expressed by the framers to depart from traditional constitutional concepts. We found there was not. Therefore, we have limited the application of the privacy clause to state action.
The battle cry sounded in the dissent may, at first blush, have an alluring ring to liberals and civil libertarians. There is, however, a real danger in extending privacy rights to the interaction of individuals.
Privacy competes with other rights declared by our state constitution to be fundamental. My right to be left alone competes with my neighbor’s right for self-expression. The danger of holding that my right to privacy is constitutionally protected from invasion by my neighbor but my neighbor’s right of free speech is not protected from my invasion, is apparent.
The rights and responsibilities that we as people have, one to the other, should be competed for in the legislative forum. This better reflects the dynamic nature of our society and gives vibrance to the political process.