JUSTICE LEAPHART,
specially concurring.
¶56 I specially concur in the court’s conclusion that evidence obtained through warrantless, consensual participant recording of a conversation in a home or automobile is not admissible in court. Although the court ties its rationale to the private settings (home and automobile) involved in these cases, I would not limit a Montana citizen’s reasonable expectation of conversational privacy to “private settings.”
¶57 In my view, Montanans do not have to anticipate that a *443 conversation, no matter what the setting, is being secretly recorded by agents of the state acting without benefit of a search warrant. As Justice Harlan noted in his dissent in United States v. White, 401 U.S. 745,91S. Ct. 1122 (1971), “it is one thing to subject the average citizen to the risk that participants in a conversation with him will subsequently divulge its contents to another, but quite a different matter to foist upon him the risk that unknown third parties may be simultaneously listening in.” 401 U.S. at 777, 91 S. Ct. at 1138. This Court relied on this distinction in State v. Brackman, 178 Mont. 105, 115,582 P.2d 1216,1221 (1978), where we recognized that consensual participant monitoring of a conversation in a shopping center parking lot violated Brackman’s expectations of privacy under the Montana Constitution. In State v. Solis, 214 Mont. 310, 693 P.2d 518 (1984), we specifically noted the concern with electronic eavesdropping expressed during the debates at the constitutional convention, Solis, 214 Mont, at 316-18, 693 P.2d at 521-22, and concluded that, in “face to face encounters in a private setting, there is a reasonable expectation that hidden monitoring is not taking place.” Solis, 214 Mont, at 318, 693 P.2d at 522. Brackman was overruled in State v. Brown, 232 Mont. 1, 8, 755 P.2d 1364, 1369 (1988). Although the Court now breathes life back into our decisions in Solis and Brackman by overruling Brown, it does so in the limited context of “private settings,” i.e., in a home or an automobile.
¶58 Article II, Section 11, like the Fourth Amendment, protects people not places. State v. Bassett, 1999 MT 109, ¶ 36, 294 Mont. 327, ¶ 36, 982 P.2d 410, ¶ 36 (citing Katz v. United States, 389 U.S. 347, 351, 88 S. Ct. 507, 511). This focus on the person rather than the place or setting is even more compelling in the context of Article II, Section 10, which “is broader in the sense that it encompasses information and activities in addition to places and persons.” State v. Nelson, 283 Mont. 231,243,941 P.2d 441,449 (1997). Article II, Section 10, provides that “[t]he right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.” Although an individual’s expectation of privacy may be more compelling in one setting (e.g., a home) than another, that is not to say that an individual conversing in a more public setting has no expectation of privacy and must reasonably anticipate the risk of warrantless consensual monitoring. As Justice Harlan observed in White, warrantless consensual monitoring “undermine[s] that confidence and sense of security in dealing with one another that is characteristic of individual relationships between citizens in a free *444 society.” White, 491 U.S. at 787, 91 S. Ct. at 1143 (Harlan dissenting). A “free society” is precisely what Article 10, Section 10, was designed to foster. This constitutional guarantee ensures that our citizens may continue to engage in private discourse, free to speak with the uninhibited spontaneity that is characteristic of our democratic society. As is evident from the constitutional debates, warrantless monitoring has a chilling effect on citizen discourse and thereby undermines the “well-being of a free society.” See Montana Constitutional Convention Verbatim Transcript Vol. V, pp. 1682-87; Mont. Const., art. X, § 10.
¶59 In my view, a society in which individuals conversing outside a private setting such as their home must anticipate the risk of state instigated, warrantless monitoring is not the “free society” envisioned by the framers of our Constitution.
¶60 Accordingly, I would resurrect our Brackman holding in its entirety and recognize an expectation of conversational privacy free from warrantless consensual monitoring, in any setting, including, but not limited to, a public parking lot.
¶61 I also note that Justice Rice’s dissent castigates the Court for framing the issue too broadly given that “the facts here do not involve situations where police did not have particularized suspicion and probable cause.” ¶ 88. One wonders why, if the police had probable cause, they did not simply apply for a warrant, as the constitution requires. There is a theme throughout the dissent that someone who chooses to engage in discourse about criminal endeavors, has no expectation of privacy.[1] The examples and rationales cited are all circuitous in that they assume the “risky” or illegal “nature” of the conversation in question. An officer does not know that a call is obscene or that the conversation relates to a drug sale until after the officer listens in or hears the tape of the conversation. If the officer does have prior reason to believe that an individual has already engaged in obscene calling or drug sales, then the officer has probable cause to obtain a warrant. In the absence of probable cause, however, *445 we should not let the ends (the illegal nature of the call) justify the means (monitoring). This is tantamount to concluding that someone who allegedly engages in theft has no Fourth Amendment expectation of privacy and thus the police are free to search his house without a warrant.
¶62 The dissent endeavors to distinguish illegal commercial discourse from private socializing; suggesting that warrantless consensual monitoring will only be allowed in illegal commercial transactions. What if the transaction were not “commercial,” that the defendant was delivering drugs free of charge. Would the dissent’s constitutional analysis suddenly transform, cloaking the defendant with an expectation of privacy.
¶63 The dissent believes that the Court has strayed from the facts of this case and has stated the issues too broadly. The Court’s societal approach is more than justified however when one looks at the breadth of the dissent’s rationale. The dissent reasons that “a conversation, unlike a home, is not a shared space. Once the conversation commences, it becomes the individual property of each participant.... Neither participant can prevent the other (absent privilege) from sharing or repeating the conversation because each has full control over it.” ¶ 101. Thus despite the dissent’s protestations that those of us engaged in private conversations about legitimate matters need not be concerned, in fact under the dissent’s reasoning, no one engaged in a conversation, wherever the setting, whatever the purpose, has an expectation of privacy since the other participant (with full control) can, consent to third-party monitoring or recording. The dissent reasons that a person conversing in a private setting for non commercial purposes, for example at a family Thanksgiving dinner, or even someone engaging in illegal activity (e.g., smoking pot at a friend’s house) will have more of an expectation of privacy than the defendants here. What the dissent fails to recognize is that, whatever the expectation of privacy is (be it heightened or diminished), it can always be undermined by monitoring through the consent of the other party to the conversation. In other words, consent of one party to a conversation will always trump the expectation of the other.
¶64 The dissent’s reliance on our decision in State v. Brown, 232 Mont. 1, 755 P.2d 1364 (1988), and the United States Supreme Court’s decision in United States v. White, 401 U.S. 745 (1971), illustrate this point; that is, irrespective of the setting, any expectation of privacy in a conversation dissolves in the face of consent by the other party. The Supreme Court “has held that however strongly a defendant may trust *446 an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities.” The Fourth Amendment does not protect “a wrongdoer’s misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.” White, 401 U.S. at 749 (quoting Hoffa v. United States, 385 U.S. 293 (1966)).
¶65 Justice Cotter suggests that Justice Rice’s rationale would apply not just to illegal commercial transactions, but to all commercial transactions. Although I agree, I think the dissent’s rationale is even broader than Justice Cotter suggests. It applies to all conversations, commercial or otherwise. Under the dissent’s reliance on Brown,[2] as long as one of the participants with “full control” consents, third-party recording or monitoring simply is not a search under the constitution. It matters not whether the monitoring occurs in the home or on main street USA. Law enforcement, without the necessity of showing probable cause or obtaining a warrant, can use this tool at their whim. ¶66 Justice Rice is of the opinion that a society in which individuals feel that they can speak freely with one another confident that the government cannot monitor the conversation without a warrant would result in anarchy. He argues that “freedom means the right to pursue one’s own life within the confines of the solemn principles upon which the democracy was founded.” In my view, one of the most “solemn” of the principles upon which our democracy flourishes is the Fourth Amendment’s warrant requirement which protects citizens from unreasonable intrusion by the state.
¶67 Anarchy is the absence of any political authority; the theory that all forms of government are oppressive and should be abolished. American Heritage Dictionary 3rd Ed. Justice Rice’s characterization to the contrary, I am not advocating anarchy. Quite the opposite; I’m arguing that our constitutional form of government, the Fourth Amendment in particular, should be enforced-not abolished.
¶68 In this day and age of high-tech surveillance, warrantless monitoring of conversations between individuals does not bode well for a free and democratic society.
JUSTICE NELSON joins the special concurrence of JUSTICE *447 LEAPHART.

 Examples from the dissent: “without considering the nature and purpose [drug deal] of the conversation.” ¶ 90; “A person simply cannot have the same expectation of privacy when he knowingly exposes illegal drugs for the commercial purpose of selling them to a non-confident as he does while engaged in private socializing with friends and family.” ¶ 96; “because society would not consider a privacy interest in a non-private commercial drug transaction to be reasonable.” ¶ 99; “The very idea that one engaged in the commercial sale of illegal drugs to a non-confidant must be given the ‘opportunity to object’ before police can monitor the parties’ conversation is a flight into the fanciful, perhaps the ludicrous.” ¶ 104 n.2; “There is not only no indication that the Declaration of Rights was intended to be applied to such risky, non-private behavior, but the debates demonstrate just the opposite.” ¶ 114.

 “We now hold that warrantless consensual electronic monitoring of face-to-face conversations by the use of body wire transmitting device, performed by law enforcement officers while pursing their official duties, does not violate the right to be free of unreasonable searches and seizures nor the privacy section of the Montana Constitution.” Brown, 232 Mont, at 8, 755 P.2d at 1369.