JUSTICE RICE,
concurring in part and dissenting in part.
¶146 I concur with the Court’s resolution of Issues 1 and 3, but dissent from Issue 2.
¶147 After Allen lured Louis Escobedo to Golie’s vehicle and violently attacked him, which included discharging a gun next to Escobedo’s head and pistol whipping him until he was unconscious and bleeding profusely from a head wound, Allen spoke about his actions to Golie over the telephone. Golie, working with the police, thereafter recorded her cell phone conversations with Allen. On the recording, Allen can be heard talking with other people on numerous occasions during his conversations with Golie, all the while downplaying the assault by claiming he had merely inflicted a “cut” on Louis’s “hand,” Allen clearly had no intention of engaging in a private conversation because he knowingly exposed his admissions about the assault to others during these conversations. “What a person knowingly exposes to the public is not protected....” State v. Scheetz, 286 Mont. 41, 49, 950 P.2d 722, 726-27 (1997) (quoting State v. Bullock, 272 Mont. 361, 375, *553 901 P.2d 61, 70 (1995)).
¶148 Despite these facts, the Court extends the decision in State v. Goetz, 2008 MT 296, 345 Mont. 421, 191 P.3d 489, and finds that Allen exhibited a subjective expectation of privacy in his cell phone conversations with Golie, and that society would be willing to recognize Allen’s expectations as reasonable, pursuant to Article II, Sections 10 and 11 of the Montana Constitution. In doing so, the Court ignores U.S. Supreme Court precedent, overrules long-standing and well-established Montana precedent, and disregards the clearly expressed intentions of the 1972 Constitutional Convention delegates.
¶ 149 In U.S. v. White, the Supreme Court held that the Constitution “permit[s] authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants ....” The White Court explained that, “[i]f the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State’s case.” U.S. v. White, 401 U.S. 745, 752, 91 S. Ct. 1122, 1126 (1971) (citing Lopez v. U.S., 373 U.S. 427, 83 S. Ct. 1381 (1963)). The White decision, announced a year prior to the Montana Constitutional Convention, was intimated by the delegates throughout their statements regarding the privacy clause, demonstrating they were certainly aware of White’s holding, as further noted below. The Supreme Court reaffirmed White’s principles in U.S. v. Caceres, holding that “[njeither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants.”[1] U.S. v. Caceres, 440 U.S. 741, 744, 99 S. Ct. 1465, 1467 (1979). However, the Court rejects White and its progeny, and instead cites the dissenting opinions of Justices Harlan and Douglas in that case. Opinion, ¶¶ 37, 56.
¶150 Then, to justify its departure from these principles, the Court offers that Montana’s constitutional right to privacy was intended to be broader than the federal Constitution on this issue. However, for over three decades our own jurisprudence has followed the principles established in White, holding that the Montana Constitution, including
*554 the right to privacy, does not protect defendants from electronic recordings of their conversations when one party to the conversation consents. State v. Hanley, 186 Mont. 410, 608 P.2d 104 (1980); State v. Coleman, 189 Mont. 492, 616 P.2d 1090 (1980); State v. Canon, 212 Mont. 157, 687 P.2d 705 (1984); State v. Solis, 214 Mont. 310, 693 P.2d 518 (1984); State v. Brown, 232 Mont. 1, 755 P.2d 1364 (1988); State v. Jones, 2008 MT 440, 347 Mont. 512, 199 P.3d 216. The Court reasons that these decisions were “flawed” with “analytical shortcomings,” necessitating a reassessment. Opinion, ¶¶ 35, 43. The Court then abrogates the previous decisions from this Court, spanning more than thirty years, on the notion that the current Court has discerned the correct meaning of the Montana Constitution.
¶151 However, the Court’s decision today clearly conflicts with the expressed intention of the Constitutional Convention delegates regarding the right to privacy. First, when debating the privacy clause, the delegates discussed an outright ban upon third party (without consent) wiretapping and electronic surveillance, but rejected this proposal. Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, pp. 1682-83 (Delegate Campbell).
¶152 Then, Delegate Robinson, seeking a stronger right to privacy, offered an amendment which would have added “Privacy of communications shall be inviolate” to the Constitution. Delegate Holland opposed the amendment, suggesting the number of actions which would be prohibited by such an amendment, including recording or searching of obscene phone calls and telegrams. Delegate Campbell offered a counter-proposal to weaken Delegate Robinson’s amendment, explaining that the convention should not be:
excluding the legitimate law enforcement people who, with the consent of one party, the person who is being threatened by phone calls and things like this, to act on behalf of that victim. The privacy of that individual certainly could be waived with his or her consent, and there’s certainly no privacy toward the obscene caller. I feel that this would not hinder law enforcement in that respect at all .... The federal law does provide a number of areas for wiretapping. They certainly are available; they could be used.
Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1685 (emphasis added). Delegate Melvin echoed these concerns, and Delegate Dahood, who had chaired the Bill of Rights Committee, offered an answer to a question about whether the privacy provisions would interfere with recording of obscene phone calls-and *555 noted the significance of one party’s consent:
First of all, this does not in any way relate to the obscene phone call situation, nor does it relate to the ability of the telephone company to make the traces. The logic and the reason is this: all personal rights, constitutional or otherwise, may be waived. Lady A is receiving the obscene phone call. She waives her right and grants the telephone company the right to intercept that communication. The individual that’s making the call does not have the right of privacy with respect to violating the law and making the obscene phone calls, so as a consequence, we are not interfering with anyone’s rights by having the telephone company attempt to intercept and discover and determine who the caller is; we are protecting the right of privacy.
Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1686. Then, perhaps most tellingly, Delegate Robinson conceded, in response to a question, that telephone conversations with one consenting party would not be deemed private, even under her stronger privacy amendment:
Oh, no. You’re-there’s a difference between your knowing that you’re telling me and you know whether there is someone around us listening or if it’s just you and I; whereas, on the telephone, you may tell me that and you may suspect that I’m the only one listening, but you certainly may not know that.
Montana Constitutional Convention, Verbatim Transcript, March 7, 1972, p. 1686 (emphasis added). Delegate Robinson eventually withdrew her amendment to the privacy clause, leaving the clause intact and as originally proposed by the Bill of Rights Committee.
¶153 These statements by the Constitutional Convention delegates on the specific issue before us are virtual echoes of the statements in White, 401 U.S. at 752, 91 S. Ct. at 1126 (an individual “must realize and risk that his companions may be reporting to the police”). As White explained, and the delegates confirmed, conversations are private only to the extent of the desire of the participants. There is nothing which prevents an individual from relaying to police something he has heard another say. While the Court is free to dispute the relative merits of U.S. Supreme Court decisions regarding the federal Constitution and the practice of electronic monitoring, it should not feel free to disregard our constitutional history. The Constitutional Convention delegates did not intend the right to privacy to extend to telephone conversations involving the consent of one party, and their intention stands in stark contrast to the Court’s holding today.
*556 ¶154 The Court’s statement, that “citizenry of this state would not tolerate” “participant monitoring and recording of telephone conversations without a warrant, and, thus, subject only to the self-restraint of law enforcement,” does not reflect the true issue. Opinion, ¶¶ 56-57. Police have never had “unchecked, warrantless” power to electronically monitor and record telephone conversations subject only to their “self-restraint.” We have long recognized the rule that police officers could intercept, transmit or record private conversations as long as one of the parties to the conversation consents. “This is true as long as the will of the consenting party has not been subjected to overbearing pressure from the authorities.” Hanley, 186 Mont. at 419, 608 P.2d at 109 (emphasis added, citations omitted). Without the voluntary consent of a conversant, or a warrant, the police have never been free to monitor or record telephone conversations-precisely as the constitutional delegates intended.
¶155 The logical conclusion of the Court’s reasoning is found in the position taken by the Concurrence that, in addition to the electronic recordings, the conversations between Golie and Allen should have been suppressed as well. Concurrence, ¶ 134. If the electronic monitoring and recording of Golie’s conversation with Allen, notwithstanding Golie’s consent, really constitutes a prohibited search under Article II, Sections 10 and 11 of the Montana Constitution, then the Concurrence is logically correct that the conversations themselves, in addition to the recordings, must also be suppressed as fruits of a warrantless, unconstitutional search. In my view, this illustrates, as a matter of logic, the ultimate difficulty of the Goetz rule and its extension here.
¶156 Therefore, upon the judgment of the U.S. Supreme Court in White and its progeny, this Court’s precedent over the past 30 years, and the expressed intention of the delegates to the 1972 Montana Constitutional Convention, I would conclude that Article II, Sections 10 and 11 of the Montana Constitution are not violated when police electronically monitor and record telephone conversations with the voluntary consent of one of the parties, and would affirm the District Court’s holding on this issue.

 All federal Circuit Courts of Appeals have accepted White as constitutional authority for the principle that search warrants are not required to authorize electronic recording when one party to the conversation consents. See State v. Brown, 232 Mont. 1, 9, 755 P.2d 1364, 1369-70 (1988) (citing C. Fishman, Wiretapping and Eavesdropping § 9, 17 (1978)).