THE STATE OF MONTANA, PLAINTIFF AND APPELLANT, *v.* DALE
BRACKMAN, DEFENDANT AND RESPONDENT.

No. 13971.
Submitted May 4, 1978.
Decided Aug. 4, 1978.
Rehearing Denied Sept. 12, 1978.
582 P.2d 1216.

Mike Greely, Atty. Gen. (argued), Brenda Gilmer, Asst. Atty. Gen. (argued), Helena, Charles Graveley, County Atty., Michael T. McCabe, Deputy County Atty. (argued), Helena, for plaintiff and appellant.

W. William Leaphart (argued), Helena, for defendant and respondant.

MR. JUSTICE DALY delivered the opinion of the Court.

Defendant Dale Brackman was charged in the District Court, Lewis and Clark County, with the felony offense of "intimidation". The District Court suppressed the state's evidence gained by electronic surveillance and the state appeals.

One Milsten and one Sherlock allegedly owed money to defendant. In December 1976, defendant became involved in a dispute with Milsten and Sherlock. He allegedly threatened them in regard to payment of this money. They reported these threats to the Lewis

and Clark county attorney and to the Helena police department. On December 10, 1976, the Helena police placed an electronic monitoring device on Milsten and instructed him to go to the shopping center where defendant worked and engage defendant in further conversation concerning the money allegedly owed and the time within which to pay that money. Milsten and Sherlock talked to defendant in the parking lot of the shopping center.

Two members of the police department monitored Milsten's and Sherlock's conversation from an unmarked car parked a short distance from the shopping center. The police listened to and recorded the conversation. Milsten and Sherlock returned later that afternoon and engaged defendant in further conversation which was also monitored and recorded. No search warrant was ever obtained to monitor and record these conversations. It should be remembered this operation was fishing for evidence to charge a crime, and not supporting evidence of a crime.

Thereafter defendant Brackman was charged with the felony offense of intimidation in violation of section 94-5-203(1)(a), R.C.M. 1947. At his arraignment defendant pleaded not guilty. On January 24, 1977, District Court Judge Gordon R. Bennett assumed jurisdiction of the case.

Defendant filed a pretrial motion on April 12, 1977, to suppress the taped conversations and any transcriptions of the recorded conversations. The defense motion alleged the recordings were made in the absence of a search warrant and without the consent or knowledge of the defendant and that the monitoring and recording process thus violated defendant's Fourth, Fifth and Fourteenth Amendment rights under the United States Constitution, as well as his rights under Art. II, Sections 10, 11 and 25, 1972 Montana Constitution.

Briefs were submitted to the District Court. The court heard oral argument and took the matter under advisement.

On July 19, 1977, the District Court issued a memorandum and order suppressing the recorded conversations and their transcriptions. The state appealed and presents these issues:

1. Does the Fourth Amendment of the United States Constitution protect an individual's conversation from warrantless monitoring and recording by the state even though the state has the consent of the other party to the conversation?

2. Do Sections 10 and 11, of Article II, 1972 Montana Constitution protect the individual from monitoring and recording by the state without a search warrant or prior showing of compelling state interest the conversation between an individual and police informants where the informants consented to the monitoring and recording.

The District Court held the Fourth Amendment required that the tape recordings and their transcriptions be suppressed under the rationale in *Katz v. United States*, (1967), 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576, 583. It held the rationale in *United States v. White*, (1971), 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed2d 453, was not applicable because it was decided on pre-*Katz* law and because it was a plurality opinion, and therefore, not binding precedent for future cases.

The state contends that *White*, not *Katz*, should be the controlling decision in this instance and that under *White* the tape recordings and their transcriptions are admissible.

*Katz* discarded the doctrines that electronic eavesdropping was permissible under the Fourth Amendment unless physical invasion of a constitutionally protected area produced the challenged evidence. In *Katz*, government agents without petitioner's consent or knowledge, attached a listening device to the outside of a public telephone booth and recorded defendant's end of his telephone conversations. The court held the recordings inadmissible in evidence in the absence of a warrant authorizing the surveillance. The lack of physical intrusion into the telephone booth did not justify using electronic devices in listening to and recording Katz's words. (The government agents violated the privacy on which Katz justifiably relied while using the telephone in those circumstances.)

In *White* the issue was whether the Fourth Amendment barred from evidence the testimony of government agents who related cer-

tain conversations which occurred between the defendant and a government informant and which the agents overheard by monitoring a radio transmitter carried by the informant. In a *plurality opinion*, Justice White held that the decision in *White* should be determined by pre-*Katz* law which held that the electronic surveillance involved did not violate White's right to be free from unreasonable searches and seizures. Relying on the court's decision in *On Lee v. United States*, (1952), 343 U.S. 747, 751, 72 S.Ct. 967, 96 L.Ed. 1270); *Lopez v. United States*, (1963), 373 U.S. 427, 438, 83 S.Ct. 1381, 10 L.Ed.2d 462; *Lewis v. United States*, (1966), 385 U.S. 206, 209, 211, 87 S.Ct. 424, 426, 17 L.Ed.2d 312, 316; and *Hoffa v. United States*, (1966), 385 U.S. 293, 301, 302, 87 S.Ct. 408, 413, 414, 17 L.Ed.2d 374, 381, 382, Justice White held that the testimony of the government agents was admissible.

In *On Lee*, the defendant was charged with selling opium. While on bail before trial, and undercover agent approached On Lee in his laundry shop. The agent wore a transmitter which permitted a member of the narcotics bureau, also named Lee, to monitor the conversations from outside the shop. The defendant incriminated himself in his conversation with the undercover agent.

At trial, the undercover agent did not testify, but agent Lee testified as to the conversation he overheard. The defendant was subsequently convicted.

In affirming On Lee's conviction the Supreme Court held that neither the informant's nor the agent's conduct amounted to an unlawful search and seizure such as was proscribed by the Fourth Amendment. In support the Court cited *Goldman v. United States*, (1942), 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, where the Court held that the action of federal agents in placing a detectaphone on the outer wall of the defendant's hotel room and thereby overhearing conversations held within the room did not violate the Fourth Amendment.

In *Lopez* the defendant was convicted of attempting to bribe an IRS agent. During the attempts the IRS agent recorded his conversations with the defendant using a small recorder he carried in his

pocket. On appeal the defendant urged that the recording of the conversations as well as the agent's testimony be suppressed.

The Court rejected the defendant's argument that the agent had unlawfully invaded his office. Additionally, the Court held that the case involved no "eavesdropping" in any proper sense of that term and stated:

"The Government did not use an electronic device to listen in on conversations it could not otherwise have heard.

"* * *

"Stripped to its essentials petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. * * * We think the risk that petitioner took in offering a bribe to Davis fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording." 373 U.S. 439, 83 S.Ct. 1288, 10 L.Ed.2d 470, 471.

In *Lewis* a government agent obtained narcotics during transactions completed in defendant's home. The agent obtained entry by "misrepresenting his idenity and stating his willingness to purchase narcotics." Although *Lewis* did not involve electronic surveillance, the defendant contended that in the absence of a warrant, any official intrusion upon the privacy of a home constitutes a Fourth Amendment violation and that the fact the suspect invited the intrusion cannot be held a waiver where the invitation was induced by fraud and deception.

The *Lewis* Court recognized that the various protections of the Bill of Rights provide checks upon official deception for the protection of the individual but that in *Lewis* the government did not overstep constitutional bounds. When the home becomes a market place for unlawful business, "that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street." *Lewis v. United States*, supra.

In *Hoffa* the petitioner was convicted of endeavoring to bribe

members of a jury in a previous trial. Part of the testimony against *Hoffa* came from Edward Partin, a friend of Hoffa's who had become a government informer. Hoffa contended that Partin's failure to disclose his role as a government agent vitiated the consent that he gave to Partin's repeated entries to his room and that by listening to Hoffa's statements Partin conducted an illegal "search" for verbal evidence.

The *Hoffa* Court said the Fourth Amendment protects "the security a man relies upon when he places himself or his property within a constitutionally protected area * * *." The Court, however, held that no interest legitimately protected by the Fourth Amendment was involved. The petitioner was not relying on the security of the hotel room but upon his misplaced confidence that Partin would not reveal his wrongdoing. The Fourth Amendment did not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States*, supra.

In *Katz*, however, a different situation from the previous cases applied. In *On Lee*, *Lopez*, *Lewis* and *Hoffa* the defendant knowingly made incriminating statements to an agent who either transmitted them (*On Lee*), recorded them (*Lopez*) or later repeated them (*Lewis* and *Hoffa*). In *Katz* the government recorded the defendant's telephone conversations without his knowledge or consent nor the knowledge or consent of the other parties to the conversation. The *Katz* Court held the government's conduct "violated the privacy upon which [Katz] justifiably relied while using the telephone booth" and thus constituted a Fourth Amendment search and seizure. The Court further said:

"* * * the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 389 U.S. 351, 352, 88 S.Ct. 511.

*Katz* recognized that the "trespass doctrine" enunciated in

*Olmstead v. United States*, (1928), 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, and in *Goldman v. United States*, (1942), 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed.1322, could no longer be regarded as controlling. Although *On Lee* relied upon *Goldman* for its holding, the *Katz* Court made no mention of it. *White*, on the other hand, relied heavily upon the *On Lee* decision and stated:

"We see no indication in *Katz* that the Court meant to disturb * * * the result reached in the *On Lee* case, nor are we now inclined to overturn this view of the Fourth Amendment." 401 U.S. 750, 91 S.Ct. 1125.

■ The defendant contends that *Katz*, not *White*, should control. In determining this issue, the Montana court must apply that law which in all probability would be applied in the event of a further appeal of the Fourth Amendment issue from this Court to the United States Supreme Court. *Spector Motor Service Inc., v. Walsh*, (2d Cir. 1943), 139 F. 809, 814, remanded on other grounds *sub nom., Spector Motor Service Inc. v. McLaughlin*, (1944), 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101.

Ten of the eleven circuits of the United States Courts of Appeal have followed Mr. Justice White's plurality opinion in *United States v. White*, supra, holding that the Fourth Amendment does not require a warrant for electronic participant monitoring.

On at least 14 occasions the United States Supreme Court has declined to grant certiorari to review decisions of the United States Courts of Appeal holding that the Fourth Amendment does not preclude warrantless, electronic participant monitoring.

■ If there was a further appeal of the case, the United States Supreme Court would probably follow Justice White's plurality opinion. Therefore in the class of cases where one party is presumed to be aware of the recording, it appears Justice White's plurality opinion would control as regards a Fourth Amendment violation and *Katz* would control in those Fourth Amendment cases where no party is aware of the monitoring.

In other words, *Katz* and *White* are not conflicting but can be harmonized so far as a Fourth Amendment violation is concerned.

We must concede the State's position on these facts is correct and *United States v. White*, supra, would control.

In addition to holding that the Fourth Amendment required the police to obtain a search warrant in the instant case, the District Court held that Art. II, Section 10, 1972 Montana Constitution, the "Right of privacy" section, required antecedent justification before an independent magistrate for the use of electronic surveillance in law enforcement.

The state contends that because Art. II, Section 11, 1972 Montana Constitution, the "Searches and seizures" section, is identical to the Fourth Amendment of the United States Constitution, the Montana Constitution affords the defendant no greater protection than does the Fourth Amendment, citing *State v. Finley*, (1977), 173 Mont. 162, 566 P.2d 1119. It does not address the issue of whether Section 10, the right to privacy section, affords the defendant any greater protection than is already included in Fourth Amendment concepts of right to privacy.

A state is free as a matter of its own law to impose greater restrictions on police activity than those that the United States Supreme Court holds to be necessary upon federal constitutional standards. *Oregon v. Hass*, (1975), 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570. Indeed, several states have done so in the area of warrantless, electronic participant monitoring. *People v. Beavers*, (1975), 393 Mich. 554, 227 N.W.2d 511 (interpreting search and seizure section of the State Constitution which was similar to the Fourth Amendment); *Tollett v. State*, (Fla. 1973), 272 So.2d 490 (interpreting search and seizure section of State Constitution which specifically provided for privacy of communications); and *State ex rel. Arnold v. County Court of Rock County*, (1971), 51 Wis.2d 434, 187 N.W.2d 354 (interpreting state statute).

The 1972 Montana Constitution adopted a provision protecting the right to privacy, it states:

"The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Art. II, Section 10, 1972 Montana Con-

stitutional Convention Proceeding show that the delegates did not intend to prohibit all invasions of privacy, but only require that no invasion of privacy should occur until a compelling state interest was demonstrated. Montana Constitutional Convention Study No. 10, 215-48; Montana Constitutional Convention, Transcript of Proceedings, Vol. VII, pp. 5179-5205, 5708-5716 (1972).

Our analysis must center upon (1) whether the defendant had a *right* to individual privacy in the instant case, if so, (2) whether that right was infringed, and (3) whether there was a compelling state interest for that infringement.

Privacy has been variously defined as the "concept of separating self from society", Bazelon, Probing Privacy, 12 Gonzaga L. Rev. 587, 588 (1977), or the ability to control access to information about oneself, Fried, Privacy, 77 Yale L.J. 475, 482, 83 (1968). However, when is privacy protected thus becoming a right to privacy? The turning point as stated in *Katz* (389 U.S. 353, 88 S.Ct. 507), is whether the defendant "justifiably relied" on his expectation of privacy, and in *White* (401 U.S. 752, 91 S.Ct. 1122), as what expectations of privacy are constitutionally justifiable (what expectations the Constitution will protect in the absence of a warrant).

Certainly, electronic interception by third parties of conversations between individuals who neither consent to nor know of the interception is a violation of their right to privacy. *Katz v. United States*, supra.

Justice White held, however, that a nonconsenting party's expectations of privacy are not constitutionally justifiable when one of the parties to the conversation consents to its electronic interception without the knowledge or consent of the other party. For constitutional purposes no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, or (2) carries radio equipment which simultaneously transmits the conversations, either to recording equipment located elsewhere or to other

agents monitoring the transmitting frequency. *United States v. White*, supra.

In his dissent in *White*, Justice Harlan rejected what he saw as two of the plurality opinion's assumptions: first, that there is no greater invasion of privacy in the third-party consensual monitoring situtation; and, second, that uncontrolled consensual surveillance in an electronic age is an intolerable technique of law enforcement given the values and goals of our political system. Justice Harlan focused on the distinction between one assuming the risk that communication directed to one party may subsequently be repeated to others and the simultaneous monitoring of a conversation by the uninvited ear of a third party functioning in cooperation with one of the participants yet unknown to the other.

In other words, may person No. 1 justifiably rely on his expectation that person No. 2 with whom he is conversing will not consent to electronic monitoring of the conversation by a third party without person No. 1's knowledge and consent?

The state maintains that consensual participant monitoring is a useful law enforcement technique the basic value of which is to corroborate conversation and to protect the participant. It argues that to require a warrant for consensual electronic surveillance would in reality "kill any possibility of using the technique."

Defendant contends the Montana Constitution insures that the "citizens may continue to engage in private discourse, free to speak with the uninhibited spontaneity that is characteristic of our democratic society." To allow warrantless consensual participant monitoring would have a "chilling" effect on citizen discourse.

The court must weigh what effect a decision favorable to the defendant would have on law enforcement abilities against this intrusion of privacy and what consequent effect that may have on freedom of speech. A decision in favor of defendant would not outlaw electronic monitoring, but only impose a warrant requirement before proceeding. In all of the cases examined, none revealed the circumstances were so exigent that the law enforcement personnel would not have had time to obtain a search warrant. Another con-

cern of the state is protection of the participant who is wearing the "bug". The participant could still wear the "bug" to keep the monitors informed of his safety, but the monitors would not be able to use evidence obtained from use of the "bug".

The question relating to probable cause versus compelling state interest must be met in any analysis of the problem of privacy in regard to the Montana Constitution. The defendant touches upon this problem which is inherent in the structure of Art. II, 1972 Montana Constitution. Section 10 provides that the right of privacy "shall not be infringed without the showing of a compelling state interest." Section 11, on the other hand, provides in part:

"* * * No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

When the Bill of Rights Committee of the Constitutional Convention reported Section 11 to the Convention, Section 11 initially read: "The people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures and *invasion of privacy* * * *." (Emphasis added). Transcript of Proceedings, supra, p. 5185. The delegates, however, deleted the phrase "and invasion of privacy" from Section 11 so that there would be no confusion with Section 10 which required a showing of a "compelling state interest" to infringe upon individual privacy. Transcript of Proceedings, supra, p. 5203.

Thus, the requirement of showing a compelling state interest is the standard, rather than a showing of probable cause.

■ Amicus Curiae argues that by statute consensual participant monitoring is given the status of a compelling state interest, citing section 94-8-114(1)(c), R.C.M.1947. Section 94-8-114(1)(c), defines the offense of "violating privacy in communications." One commits the offense if he knowingly or purposely records or causes to be recorded by use of any hidden electronic or mechanical device which reproduces a human conversation. The subsection, however, does not apply to public officials or employees when such

transcription or recording is done in the performance of their official duty.

The state argues that this exception demonstrates that consensual participant monitoring is a compelling state interest. However, the statute does nothing of the sort, it defines what constitutes the *offense* of violating privacy in communications. By exempting public officials and employees from its provisions, at the most it recognizes the state has an interest in electronic monitoring of conversations without the knowledge of all participants.

If we can assume that Milsten and Sherlock consented to the electronic monitoring then there would be no Fourth Amendment violation under *Katz*, but rather a violation of Art. II, Section 10, 1972 Montana Constitution. The state has challenged the defendant's reasonable expectation of privacy *under the facts of this case.* The Montana Constitution speaks for itself and the matter should be clear. However, if any doubt remains the *Katz* decision, as it pertains to expectation of privacy, would without doubt include these facts.

The judgment of the District Court is affirmed.

MR. JUSTICES SHEA and SHEEHY concur.

MR. CHIEF JUSTICE HASWELL and MR. JUSTICE HARRISON dissenting:

We would reverse the judgment of the District Court.

The majority has concluded that defendant had a reasonable expectation of privacy. They have determined that the electronic monitoring of defendant's conversation with Milsten and Sherlock violated Art. II, Section 10, 1972 Montana Constitution. We disagree.

We do not believe that defendant had a reasonable expectation of privacy during his conversation with Milsten and Sherlock. The entire conversation took place in the parking lot of the Tempo Shopping Center. Anyone who was walking or driving by could have overheard defendant allegedly intimidate Milsten and Sherlock. As

that is the case, defendant could not have justifiably relied on an expectation of privacy.

In *Katz*, the Supreme Court found that the defendant justifiably relied on an expectation of privacy, when his conversation took place on the phone, in a public phone booth. That case is clearly distinguishable from the present one. It cannot be argued that when a person goes into a phone booth closes the door, and uses the telephone for his conversation that he did not expect some privacy. However, the same is not true with a conversation conducted outside, in the parking lot of a shopping center, where the general public could overhear. In our view, there can be no expectation of privacy in those circumstances.

The majority has recognized that the Fourth Amendment protects people and not places. The same is true with Art. II, Section 10, 1972 Montana Constitution. This provision of our constitution protects people and not places. However, like the Fourth Amendment, Art. II, Section 10, does not protect what a person exposes to the public.

In this case, defendant exposed his conversation to the public because of the manner in which he conducted the conversation. Thus, he should not be allowed to express the recordings of this conviction based upon an alleged invasion of his right to privacy, a right he himself had abandoned.