No. 80-17

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

DONALD A. SHERIFF,

Defendant and Appellant.

_____

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Robert Wilson, Judge presiding.

Counsel of Record:

For Appellant:

Calvin Stacey, Billings, Montana

For Respondent:

Honorable Mike Greely, Attorney General, Helena, Montana
Harold Hanser, County Attorney, Billings, Montana

_____

Submitted on briefs: August 6, 1980

Decided:  NOV 3 - 1980

Filed:  NOV 3 - 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal arises from a conviction of the defendant of robbery following a jury trial in the District Court of the Thirteenth Judicial District, Yellowstone County, the Honorable Robert H. Wilson presiding.

On April 5, 1979, at approximately 1:30 a.m., the 1145 Club in Billings, Montana, was robbed by a man wearing a ski mask over his face, a red or orange T-shirt and faded blue jeans. The robber was carrying a handgun.

Shirley Murphy, the barmaid at 1145 Club on the night of the robbery, and two off-duty Billings police officers in the bar at the time of the robbery, Gary Cooper and Dennis Moen, described the robber as being about 6'1" or 6'2" tall and weighing approximately 130 pounds.

Shortly after the robbery, a police officer called to the scene to investigate approached an automobile in the vicinity which was occupied by the defendant, Donald A. Sheriff. A search of the car revealed an orange T-shirt, damp with perspiration, and a pair of faded Levis on the floor behind the front seat. A .38 caliber revolver and the stolen money were found hidden under the front fender of a car which was parked in a carport located directly west of the backdoor of the 1145 Club.

At trial the bartender, Sheila Murphy, and each of the two off-duty police officers who witnessed the robbery identified the shirt and jeans found in defendant's car as those worn by the robber. In addition, the two off-duty police officers testified that Sheriff's voice sounded like that of the robber.

Sheriff testified that on the evening of April 4, 1979, he had dinner with Pam Eller, a girlfriend, and then went to

-2-

visit a friend, John Stekar. Sheriff further testified that after knocking on the door of Stekar's residence and getting no response, he left and went to the Cattle Company, a local bar, to have a drink. After several drinks, defendant stated that he left the bar and while driving down Yellowstone Avenue, got sick and pulled to the side of the road. It was here that Sheriff was approached by the Billings police and arrested for the robbery of the 1145 Club.

The first issue raised on appeal is whether the District Court erred by failing to suppress a letter written by defendant to a friend while incarcerated in the Yellowstone County jail awaiting trial.

Shortly after his arrest, Sheriff sent a letter to his girlfriend, Pam Eller, and one to John Stekar. These letters were both opened and photocopied by a jailor.

A motion to suppress the letters was filed by Sheriff. At a hearing on the matter, the jailor who "booked" the defendant into jail on April 5, 1979, testified that Sheriff signed a "booking sheet" which authorized jail personnel to open his mail. The trial judge suppressed the letter written to the girlfriend but admitted into evidence the letter sent to John Stekar. The letter to Stekar, although admitted, was not read to the jury at trial.

The letter in pertinent part stated: "Well, I guess you know I really screwed up this time. Whatever I get out of this I will deserve. I've got to look to the future just the same."

On appeal defendant argues that the letter he wrote to Stekar should have been suppressed based on his right of privacy as guaranteed by 1972 Mont. Const., Art. II, §10. Defendant futher contends that use of the letter at trial

-3-

violated his First Amendment right to freedom of speech and his Fourth Amendment right to freedom from unreasonable search and seizure.

Censorship practices with respect to unconvicted prisoners' mail, not raising to the level of deprivation or significant impairment of assistance of counsel or of access to the courts, generally have not been regarded as objectionable on grounds that such practices constitute an invasion of privacy or an unreasonable search and seizure. See State v. McCoy (Or. 1974), 527 P.2d 725; United States v. Wilson (9th Cir. 1971), 447 F.2d 1, cert. denied, 404 U.S. 1053, 92 S.Ct. 723, 30 L.Ed.2d 742; State v. Hawkins (1967), 70 Wash.2d 697, 425 P.2d 390, cert. denied, 390 U.S. 912, 88 S.Ct. 840, 19 L.Ed.2d 883; People v. Dinkins (1966), 242 Cal.App.2d 892, 52 Cal.Rptr. 134. Courts, in allowing the practice, recognized the need for jail officials to read prisoners' mail in the context of the enforcement of jail security and discipline.

In formulating the general rule, the courts based their decisions, in part, on Stroud v. United States (1919), 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103, and place a degree of emphasis on the fact that the writer was aware that the mail was subject to censorship.

Mail censorship by jail officials, however, has recently come under attack on both First and Fourth Amendment grounds. In Procunier v. Martinez (1974), 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224, the Supreme Court held that California's prison regulations, which permitted the reading of incoming and outgoing mail, were contra to the First Amendment and could not be permitted because the State failed to establish that they were reasonably or necessarily related to the

advancement of some justifiable purpose of imprisonment or prison security. See also Palmigiano v. Travisono (D. R.I. 1970), 317 F.Supp 776, in which the court condemned a similar practice on both First and Fourth Amendment grounds.

Upon reviewing the above decisions, it is apparent that absent a showing of some compelling justifiable purpose in the nature of prison security and discipline, the interception and photocopying of the letter written by Sheriff to Stekar was violative of the First and Fourth Amendments. Here, no such finding was made.

In this instance, the sole reason the letter was examined and then photocopied was to obtain evidence to be used against defendant. At no time during trial did the State reveal any relationship between the censorship practice and prison security or discipline. With this being the case, the letter should have been excluded.

Despite the failure to exclude the letter, however, Sheriff's conviction must stand. There was ample evidence of Sheriff's guilt even absent the letter. Therefore, to exclude it would not result in a different outcome. With this being the case, we conclude there is no reversible error.

In support of his argument that the practice at issue unduly violates the right of privacy under the 1972 Montana Constitution, defendant cites State v. Brackman (1978), ___Mont.___, 582 P.2d 1216, 35 St.Rep. 1103. In Brackman the Court made an in-depth analysis of the right of privacy under the Montana Constitution. We note, however, that Brackman does not deal with how the right is specifically affected by a person's incarceration, the gravaman of the issue at hand. Thus, it will not be considered controlling in regard to this appeal.

Even assuming defendant's right to privacy was violated and the letter should have been suppressed, in this instance, as stated above, the failure to exclude the letter was not reversible error.

The second issue raised on appeal is whether the District Court erred in limiting defendant's right of cross-examination.

Sheriff was interrogated by Detective Henry Fox after his arrest and eventually gave a recorded statement later reduced to writing. At trial, the State questioned Detective Fox concerning the statement and had the statement marked for identification purposes so that Fox could examine it while testifying.

Prior to Fox's testimony, defendant requested the court's permission to cross-examine Fox as to part of the statement--namely, whether Sheriff responded in the affirmative when asked if he would submit to a polygraph test. Sheriff sought to question Fox about this matter to establish his willingness to cooperate with the police. Defendant's request was denied by the trial court.

On appeal Sheriff contends that Rule 106, Mont.R.Evid., is an appropriate basis for finding that the trial court erred in denying his request.

Rule 106, Mont.R.Evid., provides that when part of an act, declaration, conservation, writing or recorded statement is introduced by a party, the adverse party can require, if fairness so requires, that any other part of such item also be admitted. The purpose of this rule is to avoid a misleading and unfair impression which can result when matters are presented out of context. See Commission Comment to Rule 106, Mont.R.Evid.

This Court is unable to find that an unfair or misleading impression on the minds of the jury results if defendant is unable to inquire on cross-examination as to his willingness to take a polygraph test. The part of defendant's statement testified to by Fox on direct examination related to whether or not defendant owned a gun or the clothing found in the back seat of his car. The fact that defendant also made a statement showing that he would take a polygraph test is not of the nature that to omit it created a misleading impression on those statements that were admitted.

Even assuming there was error by the trial court, to omit the inquiry does not so prejudice defendant that a different decision would have resulted. At no time did the prosecution raise the issue that defendant failed to cooperate with the police. Defendant was able to take the stand and in his own defense testified as to his full cooperation with the police. The fact that he was also willing to take a polygraph test would not be determinative in the case, especially when such tests generally are not allowed as evidence in a criminal trial. See State v. Bashor (1980), ___ Mont. ___, 614 P.2d 470, 37 St.Rep. 1098.

Finally, we can find no merit in defendant's final issue, that the District Court erred in refusing his proposed Instruction No. 21.

Defendant's proposed Instruction No. 21 read as follows: "The mere fact that Donald Sheriff was found in the relative vicinity of the robbery is not sufficient in and of itself to support a finding of guilty."

Defendant contends that the refusal to give this proposed instruction was error; however, he fails to indicate

why said action was improper. In his brief defendant merely points out to the Court that his arrest took place several blocks away from the scene of the robbery.

It is true that mere presence at the scene of a crime does not establish criminal responsibility. See State ex rel. Murphy v. McKinnon (1976), 171 Mont. 120, 125, 556 P.2d 906, 909. In this instance, however, we are unable to find that an instruction in this regard is essential to a proper decision. This case does not involve an attempt to convict on mere presence.

The jury was properly and adequately instructed on the applicable law and burden of proof, as well as being instructed that defendant may not be convicted on mere conjecture, suspicion or probability. With this being the case, we find no error in the trial court's decision to omit the proposed instruction.

The decision of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-