No. 84-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ANDREW MARTINEZ, JR., II,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John L. Adams, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Harold Hanser, County Attorney, Billings, Montana

Submitted on Briefs: March 14, 1985

Decided: June 6, 1985

Filed: JUN 6 1985

*Ethel M. Harrison*
———————————————————
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Following a jury verdict in the Yellowstone County District Court, defendant was sentenced to 15 years imprisonment for the sale of dangerous drugs and 6 months for carrying a concealed weapon. The sentences were to be served concurrently with the last 5 years suspended. We affirm.

Defendant raises two issues on appeal:

1. Was the evidence sufficient to support the conviction for criminal sale of dangerous drugs?

2. Did the District Court abuse its discretion by sentencing defendant to a prison term greater than that imposed upon an accomplice?

In January 1984, Mr. Nelson, an undercover narcotics agent, purchased a pound of marijuana from John Flores, a bartender. Nelson arranged to buy an additional four pounds of marijuana from Flores on February 8, 1984.

The testimony of Flores established that on February 6, 1984, defendant and Louie Rivera drove Flores to a house at 209 South 31st Street in Billings. At that residence, Rivera instructed Flores as to how the exchange of marijuana-for-money would be made at the back door. During the course of that conversation, Flores testified that the defendant stated: "Hey, you guys, don't mess up."

On the morning of February 8, 1984, Agent Nelson arrested Flores for criminal sale of dangerous drugs and conspiracy to sell dangerous drugs. Following his arrest, Flores agreed to cooperate with the authorities and to complete the marijuana sale scheduled for that day. Flores told the police that he obtained his marijuana from Rivera and that Rivera in turn obtained his marijuana from defendant.

After several telephone calls, Flores was able to contact Rivera and was instructed to proceed to the residence at

209 South 31st Street. Agent Nelson and Flores arrived at that address at approximately 6:25 p.m. Defendant, Rivera and three other individuals were inside the residence. The testimony of those inside the house indicated the following sequence of events: Rivera arrived first; defendant arrived later, shortly after 6:00 p.m. Defendant had a conversation with Rivera. After the conversation, defendant went to the living room and watched television. Rivera went to the back door where some conversation was heard. At that time defendant was in the vicinity of the kitchen. Rivera returned from the back door, located in the kitchen, and talked to defendant in the living room. About five minutes later, defendant left.

Other testimony established that the persons at the back door were Agent Nelson and Flores. Flores gave Rivera 50 marked $100 bills, totaling $5,000, and received four pounds of marijuana in 8 zip-loc bags from Rivera.

Defendant was apprehended by the police after he left the house. During the arrest, a small automatic pistol fell from his waistband. The police found 47 of the marked $100 bills in defendant's back pocket and a baggie of marijuana. The police also arrested Rivera when he left the residence. Three of the marked $100 bills were found in Rivera's pocket. The evidence showed that the defendant's fingerprint was on one of the eight zip-loc bags of marijuana sold to Agent Nelson.

I

Was the evidence sufficient to support the conviction for criminal sale of dangerous drugs?

Defendant contends that he did not participate in the sale of marijuana because his involvement was subsequent to the time the marijuana-for-money exchange was completed.

3

In State v. Davis (Mont. 1980), 620 P.2d 1209, 1214-15, 37 St.Rep. 1958, 1964, this Court adopted the following definition of criminal sale:

> "To sell [drugs] means to knowingly and intentionally transfer possession or ownership of the [drugs] to another for money or other valuable consideration. For a person to make such a sale it is not necessary that he personally handle all of the details of the transaction. It is sufficient if the transaction is arranged by him and handled by persons under his direction and it is sufficent to constitute a sale if the person charged with sale is involved in the transaction by accepting, handling, or counting the money and directing the delivery of the [drugs]. In other words, the person charged with the sale does not have to personally conduct all of the various elements of delivery of the [drugs] and the transfer of the money. It is sufficient if he participates therein to such an extent that it is obvious that he is a part of the making of the sale."

In State v. Gladue (Mont. 1984), 679 P.2d 1256, 1258, 41 St.Rep. 669, 672, we set forth the standard applied by this Court in its review of the evidence:

> "The test for the sufficiency of the evidence to support the judgment of conviction is whether there is substantial evidence to support the conviction, viewed in a light most favorable to the State. State v. Lamb (Mont. 1982), 646 P.2d 516, 39 St.Rep. 1021. The resolution of factual matters is for the jury, and if there is substantial evidence to support the judgment, this Court must affirm the decision of the jury. State v. Hardy (1980), [185 Mont. 130] 604 P.2d 792, 37 St.Rep. 1. Disputed questions of fact and the credibility of witnesses will not be considered on appeal. State v. DeGeorge (1977), 173 Mont. 35, 566 P.2d 59."

In State v. Kutnyak (Mont. 1984), 685 P.2d 901, 910-11, 41 St.Rep. 1277, 1289, we stated the following with regard to the definition of substantial evidence:

> "Substantial evidence is defined as such relevant evidence as a reasonable mind

4

might accept as adequate to support a conclusion."

Defendant contends that because of conflicting evidence, the trier of fact could not have found the essential elements of the crime. Defendant contends that the evidence establishes that: he was visiting his friends at the residence where the sale occurred, merely made small talk with Rivera, was in the vicinity of the kitchen only because he was using the bathroom, had $4,700 in marked money because Rivera asked him to transport the money to the Brown Jug Tavern--which was only a little over a block away--and that his fingerprint was on the zip-loc bag because, while using the bathroom, he took a quantity of marijuana from the bag for himself.

The State's evidence showed that the defendant was present with Rivera and Flores at the time the initial plans were made for the sale of the $5,000 worth of marijuana and that defendant told Rivera and Flores "don't mess up." Defendant was also present at the residence where the marijuana sale took place and talked to Rivera before and after the sale. Defendant had $4,700 of marked $100 bills in his rear pocket and his fingerprint was found on 1 of the 8 bags of marijuana sold to Agent Nelson.

We conclude that while there was some conflict in the evidence, the resolution of that conflict was for the jury. We hold that, when viewed in a light most favorable to the State, there clearly was substantial evidence to support the conviction.

II

Did the District Court abuse its discretion by sentencing defendant to a prison term greater than that imposed upon an accomplice?

Defendant argues that his sentence of 15 years with 5 years suspended was unfair because Rivera only received 10 years with 7 years suspended. However, as pointed out by the District Court, defendant was both a supplier and drug dealer. This along with other factors made it appropriate to sentence him to 15 years with 5 suspended. There is no basis for comparison of that sentence, imposed after trial, to the plea bargain sentence of Rivera. The sentence imposed upon the defendant is well within the provisions of § 45-9-101, MCA, which would allow life imprisonment.

We have previously refused to review a sentence on appeal on the issue of disparity only. In State v. Lloyd (Mont. 1984), 676 P.2d 229, 231, 41 St.Rep. 263, 266, this Court stated:

> "We will not review a sentence on appeal for mere inequity or disparity. Such a review is to be conducted by the Sentence Review Division. State ex rel. Greely v. District Court (1979), 180 Mont. 317, 327, 590 P.2d 1104, 1110. Rather, this Court will only review sentences for their legality. The standard for such review is whether the court abused its discretion in the sentencing process."

This Court has also stated that "a sentence within the limits provided by statute is not an abuse of discretion." State v. Lemmon (Mont. 1984), 692 P.2d 455, 459, 41 St.Rep. 2359, 2365.

We hold that the District Court did not abuse its discretion by sentencing defendant to a prison term greater than that imposed upon his accomplice.

_____
Justice

We concur:

_____
Chief Justice

John Conway Harrison

John C. Sheehy

William E. Hunt
Justices