MR. JUSTICE HARRISON
delivered the Opinion of the Court.
Following a bench trial on May 18 and 19, 1987, before the Honorable Thomas A. Olson, in the 18th Judicial District, the defendant, Katherine Michelle Brown (hereinafter Brown) was found guilty of *3 the criminal sale of dangerous drugs, a felony, in violation of Section 45-9-101(1), MCA. Defendant appeals and we affirm.
On November 14, 1986, Officer Dave Petersen of the Bozeman Police Department was contacted by one Curt Hawley. Hawley informed Petersen that an individual named Ernest Elliot was attempting to organize the sale of a large amount of marijuana. Hawley agreed to re-contact Elliot and begin negotiations for the sale. A subsequent undercover investigation generated Brown’s arrest and conviction.
Hawley and Elliot engaged in three phone conversations on November 15, 1986. Petersen monitored and recorded the conversations with Hawley’s consent, but no search warrant was obtained. Elliot indicated his cousin would transport significant amounts of marijuana to the Bozeman area for sale, and Hawley indicated he had contact with a potential purchaser. Elliot explained that Hawley would need to deal with Elliot’s girlfriend, defendant Brown, to complete the transaction. Brown’s involvement was necessary because Elliot was scheduled to begin serving a sentence in the county jail due to a prior conviction. This arrangement was confirmed November 16,1986, when Hawley met and spoke with both Brown and Elliot in a grocery store parking lot.
After Elliot reported to the county jail, Hawley phoned Brown on November 17, and 20, 1986 to discuss further arrangements. Both calls were monitored and recorded with Hawley’s consent and no warrant was obtained. A meeting was arranged between Brown, Hawley, and the potential purchaser. The “purchaser” was Officer Evanson of the Bozeman Police Department.
The three met on November 20, 1986, and the conversation was monitored and recorded without a warrant by using a body wire transmitting device which was attached to Evanson. Brown and Evanson discussed the purchase while in a vehicle parked in a bar parking lot. Evanson showed Brown a large amount of cash to demonstrate he was a serious buyer and agreed to purchase a large amount of marijuana when it arrived in the Bozeman area.
On November 21, 1986, Evanson checked into a local motel and phoned Brown. Brown indicated the marijuana arrived by stating a friend with a baby had come to town, and Evanson asked Brown to come to his motel room. The telephone conversation was monitored and recorded without a warrant.
Brown arrived at Evanson’s room with Don Elliot, Ernest Elliot’s cousin from Missouri. The ensuing conversations were again moni *4 tored and recorded without a warrant by using a body wire attached to Evanson. After a brief conversation, the three proceeded to a different local motel and the money and marijuana were exchanged. Brown was arrested shortly thereafter, along with Don Elliot and his companion, Randy Fowler.
On January 14, 1987, defendant filed a motion to dismiss her charge alleging the information was not supported by probable cause. Defendant alleged, among other things, that Hawley “illegally taped or recorded telephone conversations with the Defendant without her knowledge ...” A District Court hearing was held February 10, 1987 and defendant’s motion was denied February 26, 1987. Defendant was subsequently convicted of the criminal sale of dangerous drugs.
Defendant raises four issues for our consideration on appeal:
1. Was there sufficient evidence to convict defendant of the sale of dangerous drugs?
2. Did defendant receive an excessive sentence?
3. When police record telephone conversations without a warrant and with the knowledge of one but not all the participants in the conversation, are the recordings admissible in a subsequent criminal trial?
4. When police use a body wire transmitting device to record a face-to-face conversation without a warrant and with the knowledge of one but not all the participants of the conversation, are the recordings admissible in a subsequent criminal trial?
1. Was there sufficient evidence to convict defendant of the sale of dangerous drugs?
Defendant contends that Section 45-9-101(1), MCA, requires that she actually sell or transfer a dangerous drug before she can be convicted of the crime for which she was charged. Defendant states the evidence fails to demonstrate she actually sold the marijuana. Further, she alleges she never took actual possession of the marijuana and concludes that the correct charge should have been conspiracy to sell drugs and not the actual sale of drugs.
We agree that the applicable language of Section 45-9-101(1), MCA, requires that defendant sell, barter, exchange, give away, or offer to sell, barter, exchange or give away a dangerous drug. We addressed a remarkably similar issue in State v. Martinez (Mont. 1985), [216 Mont. 270,] 700 P.2d 991, 42 St.Rep. 798. In holding *5 there was substantial evidence to support defendant’s conviction for the criminal sale of dangerous drugs we stated:
“To sell [drugs] means to knowingly and intentionally transfer possession or ownership of the [drugs] to another for money or other valuable consideration. For a person to make such a sale it is not necessary that he personally handle all of the details of the transaction. It is sufficient if the transaction is arranged by him and handled by persons under his direction and is sufficient to constitute a sale if the person charged with sale is involved in the transaction by accepting, handling, or counting the money and directing the delivery of the [drugs]. In other words, the person charged with the sale does not have to personally conduct all of the various elements of delivery of the [drugs] and the transfer of the money. It is sufficient if he participates therein to such an extent that it is obvious that he is a part of the making of the sale.”
Martinez, 700 P.2d at 992, 42 St.Rep. at 800 (citing, State v. Davis (Mont. 1980), [190 Mont. 285,] 620 P.2d 1209, 1214-15, 37 St.Rep. 1958, 1964). After reviewing the record, we conclude that there is substantial credible evidence demonstrating defendant assisted in organizing and coordinating the sale and was therefore an active participant in the sale. The evidence is sufficient to support the conviction and we affirm the District Court.
2. Did defendant receive an excessive sentence?
Defendant states her sentence is excessive because the statute outlawing the sale of dangerous drugs is in fact an absolute liability offense. Section 45-9-101(1), MCA, states in part:
“A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away . . . any dangerous drug ...”
Since the statute requires no mental state, defendant argues it is an absolute liability offense and that pursuant to Sections 45-2-103 and -104, MCA, the maximum penalty for such an offense is a $500 .fine.
Section 45-2-104, MCA, does provide that a person may be guilty of an absolute liability offense “only if the offense is punishable by a fine not exceeding $500 or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described.” However, Section 45-9-101(1), MCA, is not an absolute liability offense, because the State must prove that the de *6 fendant purposely or knowingly committed the offense. Section 45-2-103(1), MCA states:
“Except for deliberate homicide as defined in 45-5-102(l)(b) or an offense which involves absolute liability, a person is not guilty of an offense unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Subsections (33), (37), and (58) of 45-2-101.”
The section provides that all elements of an offense must be performed with one of the three mental states provided for in the Montana Criminal Code. Section 45-2-101(33), MCA, defines the mental state of “knowingly” and Section 45-2-101(58), MCA, defines the mental state of “purposely.” The definition of “negligently” is addressed in Section 45-2-101(37), MCA, and has no application to the offense of selling dangerous drugs. State v. Starr (1983), 204 Mont. 210, 218, 664 P.2d 893, 897.
In Starr, the defendant asserted that Section 45-9-101, MCA, was unconstitutionally vague. This Court noted that this statute has “no internal requirement of mental state as an element of the crime.” Starr, 204 Mont. at 218, 664 P.2d at 897. Therefore, we concluded that the statute was subject to Section 45-2-103, MCA, providing generally for all three mental states. Despite the fact that there is no internal mental state requirement in Section 45-9-101(1), MCA, the offense of criminal sale of dangerous drugs is subject to the requirements of Section 45-2-103(1), MCA, and the State is thus required to prove the offense was committed either purposely or knowingly.
The evidence clearly demonstrates that defendant Brown’s intention was to purposely or knowingly organize and coordinate the sale. Brown was not convicted pursuant to an absolute liability offense and the sentence of the District Court is affirmed.
3. When the police record telephone conversations without a warrant and with the permission of one but not all participants in the conversation, are the recordings admissible in a subsequent criminal trial?
Defendant contends that all of the recordings of telephone conversations took place with the knowledge and permission of only one of the participants in the conversation. Defendant states that these telephone recordings violate the privacy section of the Montana Constitution and should not be admissible in a later criminal trial. Defendant cites Section 45-8-213(1) (c), MCA, and points out that it *7 is a criminal offense to record conversations without the knowledge of all parties to the conversation. That subsection makes an exception for public employees performing an official duty, but defendant contends this exception is overly broad and therefore unconstitutional.
We hold that if one party to a telephone conversation freely consents, the conversation can be electronically monitored and recorded without a warrant, and the evidence obtained is admissible in a subsequent criminal trial. This rule remains true even if the consenting party is an informant or a police officer. State v. Canon (Mont. 1984), [212 Mont. 157,] 687 P.2d 705, 707-08, 41 St.Rep. 1659, 1661-62; State v. Coleman (1980), 189 Mont. 492, 502-03, 616 P.21 1090, 1095-96; and State v. Hanley (1980), 186 Mont. 410, 608 P.2d 104. We refuse to reverse this well established rule.
Further, defendant’s reliance on Section 45-8-213 is misplaced. That statute defines when one violates privacy in communications and prohibits one from recording conversations without the knowledge of all participants. As noted by defendant, the statute clearly excepts “duly elected or appointed public officials or employees when the transcription or recording is done in the performance of official duty . . .” The exception applies to law enforcement officers while performing their duty. We fail to see how this exception can be declared unconstitutional because it is “overly broad.” There is certainly no absolute requirement that the statute exist at all should the legislature decide to abolish it. The legislature has simply determined that such recordings should be prohibited under certain circumstances and provided for an exception which applies in this case.
4. If police use a body wire transmitting device to record a face-to-face conversation without a warrant and with the knowledge of one but not all the participants of the conversation, are the recordings admissible in a subsequent criminal trial?
Defendant argues that the right to privacy section of the Montana Constitution prohibits the use of body wire recordings as evidence under the facts of this case. As support, defendant cites State v. Brackman (1978), 178 Mont. 105, 582 P.2d 1216. In Brackman, police placed an electronic monitoring device on an individual which was used to record his conversation with the defendant. No warrant was obtained and the defendant had no knowledge that his conversation was recorded. The District Court suppressed the recordings *8 and transcriptions and this Court affirmed. The majority held there was no violation of defendant’s right to be free of unreasonable searches and seizures, but that the use of the recording as evidence would violate the right to privacy granted by the Montana Constitution.
We now hold that warrantless consensual electronic monitoring of face-to-face conversations by the use of a body wire transmitting device, performed by law enforcement officers while pursuing their official duties, does not violate the right to be free of unreasonable searches and seizures nor the privacy section of the Montana Constitution. The consent must be clearly obtained from at least one party to the conversation and must be freely made and without compulsion. Evidence obtained by such monitoring is admissible in a subsequent criminal trial. As in the case of telephone recordings, the consenting party may be an informant or a police officer. To this extent, the Brackman case is specifically overruled.
In the past, the rules regarding electronic monitoring in Montana have not been entirely clear. Partially, the confusion is present because there is no firm agreement as to whether electronic eavesdropping should be analyzed under Montana’s constitutional right to privacy, search and seizure law, or some combination of the two. Additionally, there is virtually no Montana statutory authority directing the procedures followed by law enforcement personnel.
In the Brackman case we analyzed and considered whether participant electronic monitoring violates the Fourth Amendment to the United States Constitution. After an analysis of the United States Supreme Court decisions regarding this topic, we concluded that when at least one party to the monitored conversation freely consented to the monitor, there was no impermissible search or seizure under the Fourth Amendment. Brackman 178 Mont. at 112, 582 P.2d at 1220.
Currently, there is no need to alter this portion of the Brackman case, and there are stróng indications that this conclusion is more certain today. In determining that there was no Fourth Amendment violation, this Court relied on U.S. v. White (1971), 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453. The White case addressed the issue of whether the Fourth Amendment barred from evidence the testimony of governmental agents who related certain conversations which occurred between the defendant and a government informant and which the agents overheard by monitoring a radio transmitter carried by the informant. In a plurality opinion, Justice White *9 stated the monitoring did not violate the defendant’s right to be free of unreasonable searches and seizures. The precedential value of White is often attacked because it was a plurality opinion. However, despite the passage of seventeen years, White has not been reversed. Since that time, the United States Supreme Court has stated:
“[N] either the Constitution nor any act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants.”
U.S. v. Caceres (1979), 440 U.S. 741, 744, 99 S.Ct. 1465, 1467, 59 L.Ed.2d 733, 738 (addressing the admissibility of consensual recordings made by an Internal Revenue Service agent that failed to observe and comply with Internal Revenue Service regulations). Additionally, “all eleven Circuit Courts of Appeals have accepted White as constitutional authority for the principle that search warrants are not required to authorize consensual interceptions . . C. Fishman, Wiretapping and Eavesdropping, Section 9, at 17 (1978). Warrant-less consensual electronic monitoring of face-to-face conversations does not violate the Fourth Amendment to the United States Constitution.
The Montana Constitution also provides that the people shall be free from unreasonable searches and seizures. Mont. Const. Article II, Section 11. Although the language of this provision is nearly identical to that contained in the Fourth Amendment to the United States Constitution, we recognize that such a provision in the Montana Constitution may be interpreted so as to provide a greater amount of rights than that contained in the Federal Constitution. See, State v. Johnson (Mont. 1986), [221 Mont. 503,] 719 P.2d 1248, 1254-55, 43 St.Rep. 1010, 1016-17; and Butte Community Union v. Lewis (Mont. 1986), [219 Mont. 426,] 712 P.2d 1309, 1313, 43 St.Rep. 65, 70. Additionally, the Montana Constitution provides that the right of individual privacy shall not be infringed without the showing of a compelling state interest. Mont. Const. Article II, Section 10. There is no similar textual language in the United States Constitution and we have therefore recognized that this section grants rights beyond that inferred from the United States Constitution. See generally, Montana Human Rights Division v. City of Billings (1982), 199 Mont. 434, 649 P.2d 1283. Because Montana’s Constitutional protections have an existence which is separate from the Federal Constitutional protections it is necessary to offer an inde *10 pendent analysis of the privacy and search and seizure provisions of the Montana Constitution.
“Where no reasonable expectation of privacy exists, there is neither a ‘search’ nor a ‘seizure’ within the contemplation of . . . Article II, Section 11 of the Montana Constitution.” State v. Bennett (1983), 205 Mont. 117, 121, 666 P.2d 747, 749. There must be some violation of a reasonable expectation of privacy before the provision applies. In the case at hand, the defendant Brown claimed an actual or subjective expectation of privacy, because she personally expected her conversations with the undercover officer to be private. However, it must also be determined whether her expectation was reasonably justifiable. We conclude that a defendant has no reasonably justifiable expectation that statements made to another will be kept private by that person. Therefore, the facts of this case present no unreasonable search or seizure within the contemplation of the Montana Constitution.
The analysis however must go further because the framers of the Montana Constitution specifically provided an additional protection with the right to privacy provision. Due to the sensitive nature of this issue, we must consider more than just the defendant’s reasonable expectation of privacy because such a test offers no more than that provided by Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Katz specifically notes that the “general” right to privacy is left largely to the law of the individual states. 389 U.S. at 350-51, 80 S.Ct. at 510, 511.
Commentators have suggested that this Court consider “whether the area to be searched or the object to be seized is owned or possessed” by the defendant. Elison and NettikSimmons, Right of Privacy, 48 Mont.L.Rev. 1, 26 (1987). The “object” to be seized in this case is the conversation between the defendant and the undercover officer. It is logically difficult to strictly characterize the defendant’s possessory interest in her conversation with the officer. We conclude that both participants had an equal interest in the conversation and that either could consent to the monitoring. Additionally, despite the fact that we have already determined the defendant had no reasonably justifiable expectation of privacy, we must also consider whether the government activity in this case is excessively intrusive. This additional consideration is needed because a defendant may have his reasonable expectation of privacy distorted by excessive intrusive government activity. In other words, the very fact that the government is acting in an overly intrusive manner may distort or *11 obliterate any reasonable expectation of privacy. See, e.g., Smith v. Maryland (1979), 442 U.S. 735, 740-41, n. 5, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 227. However, the warrantless consensual electronic monitoring in this case was not excessive. The unsolicited incriminating statements by Brown were freely spoken to the undercover officer as she attempted to coordinate the sale. Defendant Brown simply mistakenly placed her trust in the officer and we refuse to conclude that the recording of her words was excessively intrusive.
There is no question that the undercover officer could testify as to the oral incriminating statements made to him by Brown. Logically, the recording of these statements by the officer and the introduction of the recording in evidence, with proper foundation at the trial, is equally admissible as the officer’s testimony of what oral statements had been made by Brown. The recorded statements would be more reliable than the recall of the witness as to what had been said to him.
To summarize, we hold there is no violation of Montana’s right to privacy, or the prohibition against unreasonable searches and seizures, when law enforcement officers pursing their official duties perform warrantless consensual electronic monitoring of face-to-face conversations. It is important to stress that this holding does not open the floodgates to create an Orwellian society and that the individual is not left without protections against inappropriate electronic eavesdropping. Section 45-8-213, MCA, still makes it a criminal offense to record a conversation without the permission of all participants unless an exception provided within the statute applies. Additionally, warrantless monitoring of any conversation without the permission and consent of one participant is strictly prohibited by both the United States and Montana constitutions.
For the foregoing reasons, the judgment of the District Court is affirmed in all respects.
MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES GULBRANDSON, WEBER, SHEEHY and McDONOUGH concur.