JUSTICE ERDMANN
dissenting.
I respectfully dissent from the majority’s conclusion that the implied consent law, § 61-8-402, MCA, apples to a negligent vehicular assault prosecution. The majority’s opinion allows the implied con *48 sent law to be used as a shield by defendants in alcohol or drug-related accidents and allows them to prevent the introduction of otherwise admissible evidence of chemical impairment. Further, although not reached by the majority, I would conclude that a warrantless search was appropriate under these circumstances and that the seizure of blood did not violate Greg Stueck’s right of privacy. I would reverse the District Court on all three of these issues and remand the matter for trial.
The District Court granted Greg’s motion to suppress the blood sample evidence by finding that State v. Thompson (1984), 207 Mont. 433, 674 P.2d 1094, does not apply when a charge of negligent vehicular assault is brought. In Thompson, this Court held that the implied consent law did not apply to a negligent homicide charge. In reaching that conclusion, the Court first reviewed the language of the implied consent law, and then employed a three-step analysis to determine whether that law should apply to charges other than DUI.
Given the clear language of § 61-8-402, MCA, it is questionable whether the analysis need go any further than a reading of the statute. This basic statutory construction analysis is the first of the Thompson criteria. Section 61-8-402, MCA, provides in pertinent part:
(1) Aperson who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person’s blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person’s body if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two.
(Emphasis added.) Section 61-8-401, MCA, referenced in the implied consent statute, is the statute that prohibits DUI. By the clear language of the statute itself, it is applicable only to cases involving an arrest for DUI. As this Court recently noted in State v. Gould (1995), 273 Mont. 207, 902 P.2d 532:
In interpreting a statute, we first look to the plain meaning of its words. [State v.] Christensen, [(1994), 265 Mont. 374], 877 P.2d at 469 (citation omitted). If the legislative intent can be ascertained from the plain meaning of the words used, no further interpretation is required and we will not resort to legislative history. Clarke v. Massey (1995), [271 Mont. 412], 897 P.2d 1085,1088. Where the language is plain, unambiguous, direct, and certain, the statute *49 speaks for itself and there is no need to resort to extrinsic means of interpretation. Christensen, 877 P.2d at 469 (citation omitted). In addition,
[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted ....
Section 1-2-101, MCA.
Gould, 902 P.2d at 540.
As correctly recognized by the majority, the plain, unambiguous language of § 61-8-402, MCA, makes the statute applicable only where there has been an arrest for DUI. As Greg was not arrested for DUI, the only logical conclusion is that the implied consent statute does not apply. The majority, however, holds that § 61-8-402, MCA, applies to a charge of negligent vehicular assault, and in doing so, concludes that an arrest for negligent vehicular homicide constitutes an arrest for DUI.
While the majority is correct in noting that driving under the influence of alcohol or drugs is one of the elements of the negligent homicide statute, that does not make an arrest for negligent vehicular assault an arrest for DUI. The Legislature could easily have extended the provisions of the implied consent statute to both vehicular homicide and negligent vehicular assault, but has chosen not to do so. In concluding that an arrest for negligent vehicular assault constitutes an arrest for DUI, the majority has inserted provisions into § 61-8-402, MCA, that were omitted by the Legislature. That is not the proper function of this Court.
As noted, the first of the Thompson criteria deals with legislative intent and statutory interpretation, which is discussed above. As the plain language of the statute is clear, I do not believe that further analysis is necessary. However, even if the second and third Thompson criteria are utilized, the result is the same.
In Thompson, this Court stated:
We find that Section 61-8-402 does not apply to negligent homicide prosecutions. This conclusion is based on three considerations. First we consider the legislative intent. “Legislative intent must first be determined from the plain meaning of the words used; and if the language is plain, unambiguous, direct, and certain, the statute speaks for itself.” Crist v. Segna (1981), 191 Mont. 210, 622 P.2d 1028 at 1029, citing Dunphy v. Anaconda Co. (1968), 151 Mont. 76, 438 P.2d 660. The language of the statute and an *50 examination of the statutory scheme of Title 61, Chapter 8, part 4 plainly show that application of the implied consent law to negligent homicide cases was not within the legislature’s contemplation. The operative language of Section 61-8-402 reads,
“Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent, subject to the provisions of 61-8-401, to a chemical test of his blood, breath, or urine for the purpose of determining the alcohol content of his blood if arrested by a peace officer for driving or in actual physical control of a motor vehicle while under the influence of alcohol.” (emphasis supplied)
The italicized passage above makes it clear that the protections afforded there are not engaged until there is an arrest for driving under the influence. (But, see State v. Campbell (1980), 189 Mont. 187, 615 P.2d 190, where we held that an arrest is not always a prerequisite to administration of a blood alcohol test.) Not only is the section specifically premised on such an arrest, but it is made subject to the section of the code which outlines the offense of driving under the influence of alcohol or drugs.... This Court does not have the power to remove or ignore language in a statute.
The second consideration is how similar implied consent laws have been interpreted in other jurisdictions.... [W]e feel the better reasoned cases hold that the statute does not apply to negligent homicide cases. Relying on the plain wording of the statute, these cases held that applying the implied consent laws to negligent homicide prosecutions was not what the legislature had intended.
The third consideration also weighed heavily on the courts deciding the cases cited immediately above; suspension of the driver’s license is simply an insufficient penalty for refusing to submit to a chemical analysis when there has been a death caused by the drinking driver. The gravity of the crime heightens the importance of the blood sample, and it appears the legislature felt the administrative remedy was simply inappropriate. The decision to modify the scope of the implied consent law properly rests within the legislature’s power. It is not within our power to read into a statute more than is found there, as appellant would have us do. Therefore, we hold that Section 61-8-402 does not apply to suspects in negligent homicide prosecutions.
Thompson, 674 P.2d at 1096-97 (citations omitted).
*51 The Court’s discussion of the first Thompson criteria provides additional support for the conclusion that the Legislature did not intend the implied consent law to apply to charges other than DUI. The protection afforded by the implied consent law simply is not triggered until there has been an arrest for DUI. In this case, there was no arrest for DUI.
After reaching its conclusion that the Legislature intended that an arrest for negligent vehicular assault constitutes an arrest for DUI, the majority then determines that the remaining two Thompson criteria are of limited significance. This is not surprising since, after attempting to distinguish the cases from other jurisdictions which support the Státe’s position, the majority can cite no cases which support its position. State v. Woolery (Idaho 1989), 775 P.2d 1210; State v. Armenia (Or. Ct. App. 1985), 702 P.2d 1113; State v. Zielke (Wis. 1987), 403 N.W.2d 427.
The third Thompson criteria addresses the gravity of the crime. The majority notes that vehicular homicide involves the death of an individual and is a felony, while negligent vehicular assault is merely a misdemeanor. While conceding that this criteria is of very limited significance, the majority relies on it for further support of its conclusion that § 61-8-402, MCA, applies to an arrest for negligent vehicular assault. The Thompson case did not make any distinction between felonies and misdemeanors and that is a troublesome distinction to create. Further, it cannot be disputed that negligent vehicular assault is a serious crime for which the mere sanction of having a license temporarily suspended is an insufficient penalty.
The negligent vehicular assault statute requires that a person: (1) operate a vehicle in a negligent manner; (2) while driving under the influence of alcohol or drugs; and that (3) his or her conduct is the cause of bodily injury to another. Section 45-5-205, MCA. Under the majority’s rationale, if the victim in this case would have died, the implied consent law would not have applied, but if the victim were only injured, seriously or otherwise, it would apply. Such a judicially created distinction is not warranted and places an unreasonable burden on law enforcement officers who investigate accidents involving alcohol or drugs.
Whether applying the basic rules of statutory interpretation, or utilizing the Thompson criteria, it is clear that the Legislature did not intend that an individual involved in an alcohol or drug-related traffic accident be able to use the implied consent law as a shield to *52 prevent evidence of chemical impairment to be introduced at trial. As noted by the Wisconsin Court in Zielke:
The implied consent law is an important weapon in the battle against drunk driving in this State. Neither the law, its history or common sense allows this court to countenance its use as a shield by the defense to prevent constitutionally obtained evidence from being admitted at trial.
Zielke, 403 N.W.2d at 434.
While not addressed by the majority, I would conclude that the seizure of blood in this case was a reasonable seizure and did not violate Greg’s privacy interests. By the time the officers reached Greg’s residence, approximately one hour and twenty-five minutes had passed since the accident. The additional time in obtaining a search warrant in the middle of the night would have resulted in further dissipation of Greg’s blood alcohol content and the loss of valuable evidence. The means and procedures employed in taking the blood were reasonable. Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.
While this Court has recognized that Montana has a broad right of privacy in Article II, Section 10, of the Montana Constitution, the right of privacy contained in that provision is to be weighed against any applicable state interest. State v. Brown (1988), 232 Mont. 1, 755 P.2d 1364; State ex rel. Zander v. District Court (1979), 180 Mont. 548, 591 P.2d 656. Here, the State’s interest is to enforce the criminal and traffic laws which protect all citizens, and specifically in this case, to apprehend and appropriately punish the person who rear-ended the Troth vehicle and then left the scene of an injury accident. I would find these interests to be compelling and outweigh Greg’s right of privacy associated with his blood.
For the foregoing reasons I would reverse the District Court and remand this matter for trial.